960 A.2d 735

BOROUGH OF GLASSBORO, PLAINTIFF–APPELLANT, v. FRATERNAL ORDER OF POLICE, LODGE NO. 108, IN THE MATTER OF SERGEANT PETER L. AMICO, DEFENDANT–RESPONDENT.

Argued September 8, 2008—Decided November 17, 2008.

*William F. Cook* argued the cause for appellant (*Brown & Connery,* attorneys).

*Peter H. Demkovitz* argued the cause for respondent (*Markowitz & Richman,* attorneys).

Justice LONG delivered the opinion of the Court.

In 2004, the Borough of Glassboro Police Department (Borough) announced an opening for the position of lieutenant. Three candidates applied, including Sergeants Peter Amico and William Highley. As a non-civil service municipality, the Borough is not subject to the statutory requirements of a "comprehensive promotional procedure." Rather, state law requires only that "[d]ue consideration shall be given to the member or officer so proposed

for the promotion, to the length and merit of his service and preference shall be given according to seniority in service." *N.J.S.A.* 40A:14–129.

The Borough implemented a three-stage promotional procedure. The scores from Phases I and II were aggregated for a total possible score of 100%. Phase I was worth 20% and Phase II, 80%. Phase I consisted of an interview with the Borough Chief of Police. Phase II involved an oral and written exam. Phase IIA, the written portion, was a multiple-choice test designed by the International Association of Chiefs of Police. Phase IIB, the oral component, consisted of interviews with a panel of four independent police chiefs. Following Phases I and II, the "Cumulative Final Scores" were as follows: Sergeant Amico, 93.8, and Sergeant Highley, 92.4. (No issue has been raised in this case regarding Phases I and II.)

In Phase III, each applicant was interviewed by the Borough Public Safety Committee, which included Borough Council members, the Borough Administrator, and the Chief of Police. Candidates were advised that they would be asked questions "concerning their department's SOPs Rules & Regulations, in addition to questions concerning the Boro Personnel Policy & Procedures and Boro Ordinances." The purpose of Phase III was to test "leadership intangibles which are necessary for the position" and "[b]y their very nature, these intangibles evade formal testing." After the completion of Phase III, Highley—who, to that point, had been ranked second in the Phase I and II testing—was awarded the promotion.

In subsequent conversations Amico had with the Chief of Police and the Borough Administrator, reference was made to Amico's move out of the Borough and its possible negative effect on the outcome. The union representing Amico, the Fraternal Order of Police, Lodge No. 108 (FOP), filed a grievance on behalf of Amico, claiming that the use of Phase III as more than a "confirmatory interview" altered the terms and conditions of employment in violation of Article XXIX of the collective bargaining agreement

between the Borough and the FOP; and that the Borough violated *N.J.S.A.* 40A:14–122.6 by making residency a factor in its promotional decision. Specifically, the union sought disclosure from the Borough regarding the promotional process, asking that the parties meet to discuss the details of the process and that the Borough turn over "the questions administered to candidates and their recorded responses (if any) relative to the final ranking process." In the event that Amico's contractual rights were violated, the union asked that he "be made whole" by way of promotion to lieutenant.

When the parties were unable to resolve the grievance, the matter was submitted to arbitration, where Amico was awarded the position. In ruling, the arbitrator noted that Amico, whose education and seniority were greater than Highley's, was 1.4 points ahead of Highley after Phases I and II of the Borough's promotional test, but then fell behind following the Phase III interview. However, as the arbitrator pointed out, there was "nothing in the record to positively determine as to what elements in the Phase III interview caused [Amico] to fall behind Sgt. Highley." Specifically, "the results of the Phase III session if they were recorded at all were not introduced into evidence." The arbitrator further noted that the record did not even contain the questions asked during the interviews. The arbitrator went on to surmise from the testimony "that it must have been that the grievant, a longtime resident of Glassboro and a graduate of its High School, had recently moved away from the Borough." Pursuant to *N.J.S.A.* 40A:14–122.6, the arbitrator noted that in a noncivil service municipality such as the Borough, residency may only be used as a tie-breaker where "the resident and nonresident achieved the same final average score in [a promotion] test" which was not the case here. The arbitrator concluded that Amico was "inappropriately deprived ... of the promotion contrary to the provisions of *N.J.S.A.* 40A:14–122.6" and that he should be promoted with full back pay.

The Borough filed a complaint in the Superior Court, Law Division, and the arbitrator's award was stayed pending the outcome of the case. In its verified complaint, the Borough asserted that it had placed substantial evidence in the record noting what occurred during the Phase III interview and that the arbitrator disregarded the sworn testimony of the Borough Administrator, the Chief of Police, "and all of the Phase III documents to which the Chief referenced during the arbitration." Appended to its verified complaint were two pages of questions asked of each candidate in Phase III, as well as the Chief's corresponding notes concerning each candidate's answers.

For some unexplained reason, the Borough did not submit the first page of the questions asked of Highley or the Chief's comments. Although various other members on the Public Safety Committee were involved in the Phase III interviews, the Borough admitted before the trial judge that there was "no recording of [each candidate's] specific answers" by the questioners. Thus, in all, the trial judge had in the record two pages of questions and the Chief's notes related to Amico's Phase III interview and one page related to Highley's interview.

At the bottom of page two of the questions asked of Amico were the following notes:

Moral: 6.0
MV Enforcement Ticket [unintelligible]: 15–20
Low Productivity: Explain that quality is not quantity
UCR [unintelligible] office: NCIC are up to date

At the bottom of the page of the questions asked of Highley were the following notes:

Moral: 8.0
MV Enforcement: 20–25
Review stat with each officer

The verification submitted by the Chief did not address those notes and the Borough's attorney conceded that "from these three pieces of paper, I would agree that Your Honor can't tell" that "somehow Highley did a better job in his answers than Amico."

The Borough claimed that the Chief gave extensive testimony at the arbitration hearing "explaining what exactly occurred during phase three and explaining that it was not only the Chief who participated in the phase three questioning but the entire Borough council." The Borough thus argued that the arbitrator was incorrect when he ruled that he had "nothing in the record to determine what factors in phase three caused [Amico] to drop" and that his award was "erroneous" and "must be vacated." In the alternative, the Borough asked the trial judge to "have your own plenary hearing to hear what these people had to say and then decide if our actions were arbitrary, capricious, or unreasonable."

Noting that so long as the arbitrator's "determination is reasonably debatable," it is not to be disturbed, the trial judge denied the Borough's motion to vacate the arbitrator's award or to hold a plenary hearing. Although the judge "disagree[d] with [the arbitrator] as to whether residency is a factor that could be utilized," he concluded that "on what I have, it seems to me that the arbitrator could not have come up with any different decision than the one he reached."

Acknowledging that the questions asked of the candidates during Phase III were in the record before him, the judge noted that the Borough did not explain how Highley passed Amico after the first two phases:

the Borough was in a very advantageous position [before] the arbitrator. All they really needed to do ... was put somebody on the stand and have that person say, well, look, here are the questions. Everybody was asked the same questions, and here were the answers that [they] gave and use it as an example during argument.

They could've asked Highl[e]y, ... how would you improve community relations, and he could've said, well, it's important that we be members of the local rotary or that we be members of certain social organizations, so that we keep contact with people, he gives all kinds of answers that have a great deal of strength to them, and then Amico answers, and the record shows that Amico gave what might be a fairly benign response, something that really didn't have any moment to it, and because of that [the Borough] scored that in a way that said, well, look, Highl[e]y has all these things that he's suggesting and recommending and doing, and Amico's position was something fairly forgettable, and, therefore, on that point Highl[e]y scored better.... [I]t could've been provided to the arbitrator, and then the arbitrator would've had a sound foundation on the record from which to say, well,

look, yes, Amico came in first out of phase one and two, but when he got the oral portion of this, he didn't fare as well.

The trial judge went on:

it's difficult to tell what [the candidates'] responses were, what they meant to the note taker. I think this was the Chief's actual page. . . . There are actually things at the bottom of one page where numbers are referenced.· I don't know what those numbers mean. They're not specified. They don't have anything from anyone that says whether this was being scored, how it was scored, and how the participants scored . . . pursuant to these questions.

. . . [S]o I have raw data, but it doesn't mean anything to me. And I assume that the arbitrator was presented with the same file. He may have been presented with raw data, but it wasn't made sensible to him such that it showed how the Borough distinguished Highley from Amico.

Accordingly, the judge affirmed the arbitrator's award, but granted the Borough's motion for a stay pending appeal.

The Borough moved for reconsideration, submitting some further evidence of what had transpired during the arbitration. In denying the motion, the trial judge expressed the view that the further evidence was not "newly discovered," and, in any event, failed to explain how Highley passed Amico in the third phase.

The Appellate Division affirmed, essentially because it agreed with the arbitrator and the trial judge that the record was bare regarding the Borough's reasoning for elevating Highley over Amico. Thus,

[b]ased on the scores at the end of phase two and the absence of anything in the record that demonstrates any basis for the Public Safety Committee to have elevated Highley over Amico in the third phase, we, like the arbitrator and the Law Division judge, must conclude that the promotion of Highley was an arbitrary and capricious act.

[*Borough of Glassboro v. FOP Lodge No. 108,* 395 *N.J.Super.* 644, 655, 930 *A.2d* 484 (App.Div.2007).]

We granted certification, 193 *N.J.* 276, 937 *A.2d* 978 (2007), and now affirm in part and reverse and remand in part.

## I.

▇▇▇▇ An arbitrator is to uphold a non-civil service municipality's promotion decision unless the decision is " 'clearly arbitrary, capricious or unreasonable.' " *Burke v. Twp. of Franklin,* 261

*N.J.Super.* 592, 598, 619 *A.*2d 643 (App.Div.1993), *rev'd on other grounds, Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 215, 723 *A.*2d 944 (1999) (quoting *Gaskill v. Mayor and Comm'rs of Avalon,* 143 *N.J.Super.* 391, 394, 363 *A.*2d 359 (Law Div.1976), *aff'd on other grounds,* 149 *N.J.Super.* 364, 373 *A.*2d 1019 (App. Div.1977)). Because " '[t]he aim of arbitration is to provide the final disposition of a dispute in a speedy and inexpensive manner[,] . . . . judicial review of an arbitrator's decision is very limited, and the arbitrator's decision is not to be cast aside lightly.' " *Pascack Valley Reg'l High Sch. Bd. of Educ. v. Pascack Valley Reg'l Support Staff Ass'n,* 192 *N.J.* 489, 496, 933 *A.*2d 589 (2007) (quoting *Bd. of Educ. of Alpha v. Alpha Educ. Ass'n,* 190 *N.J.* 34, 42, 918 *A.*2d 579 (2006)); *see also Northvale Bd. of Educ. v. Northvale Educ. Ass'n,* 192 *N.J.* 501, 507–08, 933 *A.*2d 596 (2007) (reiterating preference for arbitration to resolve labor disputes).

"In the context of public employment an arbitrator's determinations in binding arbitration are subject to pertinent statutory criteria as well as the public interest and welfare." *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 217, 405 *A.*2d 393 (1979). In the public sector, the New Jersey Arbitration Act, *N.J.S.A.* 2A:24–1 to –11,

permits courts to vacate an arbitration award, but only in the following limited circumstances:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made. [*N.J. Tpk. Auth. v. Local 196,* 190 *N.J.* 283, 293, 920 *A.*2d 88 (2007) (quoting *N.J.S.A.* 2A:24–8).]

In addition to those statutorily defined grounds, a court may vacate an arbitration award where the award is "contrary to existing law or public policy." *Local 196, supra,* 190 *N.J.* at 293–

94, 920 *A.*2d 88 (quoting *Bd. of Educ. of Alpha, supra,* 188 *N.J.* at 603, 911 *A.*2d 903). "[P]ublic policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents, rather than based on amorphous considerations of the common weal." *Id.* at 295, 920 *A.*2d 88. Therefore, the public policy exception may be used to vacate arbitral awards "only in 'rare circumstances.'" *Id.* at 294, 920 *A.*2d 88.

We have carefully reviewed the record in light of those standards and have determined, as did both the Law Division and the Appellate Division, that there is no warrant to reject the arbitrator's determination. The conclusion that "[t]he record is bare as to the Borough's reasoning for elevating Highley over Amico," *FOP Lodge No. 108,* 395 *N.J.Super.* at 654, 930 *A.*2d 484, is unassailable, and that absent record is the nub of this rather straightforward case. Contrary to the Borough's claims, this case does not implicate public policy, or the highly deferential standard of review. Nor is it a commentary on the Borough's entirely proper choice to incorporate subjective components into its promotional procedure. *Ibid.* Rather, the case stands for the unremarkable proposition that, should a grievant make the type of showing that Amico made here, and should the municipality not provide even the simplest explanation on the record of some rational reason for its decision, the decision cannot stand.

The Borough's alternative argument is that it had an absolute right to promote Highley based on residency and that the arbitrator made a mistake of law in concluding otherwise. It contends that because Amico and Highley were only separated by 1.4 points on a test scaled to 100 points following the first two rounds, their scores were the "same" for the purposes of *N.J.S.A.* 40A:14–122.6, and that it was entitled to consider Highley's residence in vaulting him over Amico in the promotion process.

*N.J.S.A.* 40A:14–122.6 provides:

> In any municipality wherein Title 11 (Civil Service) ... is not in operation but wherein promotions to positions on the police department and force are based upon merit as determined by suitable promotion tests for such positions, *a resident shall*

*be appointed rather than a nonresident thereof in any instance in which the resident and nonresident achieved the same final average score in such test.*
[ (footnote omitted) (emphasis added).]

As is clear from the statute, the Legislature established residence as a tie-breaker in non-civil service municipalities. However, there was no tie in this case after the first two rounds. *See Webster's II New College Dictionary* 1181 (3rd ed.2005) (defining "tie" as "[t]o equal (an opponent or an opponent's score) in a contest"). In such a case, "[i]t is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.' " *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (quoting *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)). In short, in these circumstances, the Borough can derive no comfort from *N.J.S.A.* 40A:14–122.6.

## II.

■  We part company from our colleagues below in one respect. Although it was clearly within the arbitrator's authority to set aside Highley's promotion because the municipality failed to provide evidence of the reasons for its actions, it does not follow that Amico was entitled to the promotion. The Borough instituted a three-phase promotional procedure, including a third phase that tested "leadership intangibles which are necessary for the position." At the time of the arbitration, as today, only the first two phases have been accounted for. If the record was inadequate regarding how Highley passed Amico during the third phase, it was equally deficient in respect of Amico's leadership skills and how, upon testing, he lost his lead. In short, it was beyond the arbitrator's power to fashion a remedy that promoted Amico, and the affirmance of that award must be reversed.

We thus remand the matter to the Borough to conduct a new Phase III proceeding. We recognize that much has happened since the inception of this case. Both Amico and Highley have been serving as lieutenants for a considerable period of time. We

also acknowledge that creating a process to reflect the status and abilities of the candidates in 2004 is no mean feat. Nevertheless, unless the parties amicably resolve the case among themselves, the Borough must reschedule Phase III of the promotional proceeding and create an appropriate record to justify the appointment of one or the other of the candidates as of 2004, thereby resolving any outstanding back pay and seniority issues.

### III.

The judgment of the Appellate Division is affirmed in part and reversed in part for the reasons to which we have adverted.

*For affirmance in part/reversal in part/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.