61 A.3d 941

BOROUGH OF EAST RUTHERFORD, PLAINTIFF–APPELLANT,
v. EAST RUTHERFORD PBA LOCAL 275, DEFENDANT–
RESPONDENT.

Argued September 24, 2012—Decided March 19, 2013.

---

*David F. Corrigan* argued the cause for appellant (*Mr. Corrigan*, attorney; *Mr. Corrigan* and *Bradley D. Tishman*, on the brief).

*Lauren P. Sandy* argued the cause for respondent (*Loccke, Correia, Limsky & Bukosky*, attorneys).

*Steven W. Kleinman* submitted a brief on behalf of amici curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (*Gregg F. Paster & Associates*, attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal, the Court reviews a public-sector arbitration award. The subject matter of the grievance that led to the award concerns the provision of health benefits under a collectively bargained agreement (CBA) between the Borough of East Rutherford (Borough) and the East Rutherford Policemen's Benevolent Association, Local 275 (PBA), effective for the period of January 1, 2005, through December 31, 2009. The Borough furnished health-care coverage for its employees through the State Health Benefits Plan (SHBP). Prior to and at the commencement of the CBA's effective period, the SHBP's pertinent medical coverage plans required a $5.00 co-payment from plan participants for doctor's office visits. Effective January 1, 2007, the State Health Benefits Commission (Commission) increased the co-payment requirement to $10.00 per office visit. The Borough passed along the increase to members covered by the CBA.

The PBA filed a grievance disputing the increase, claiming among other things that the Preservation of Rights Article of the CBA precluded imposition of the higher co-payment obligation on employees covered by the existing CBA. The matter proceeded to arbitration. With only days remaining before the CBA's effective period expired, the Arbitrator found a violation of the CBA and ordered a remedy. The Arbitrator stated that employees covered by the CBA were required to comply with the increased co-payment instituted by the Commission. However, she concluded that from the effective date of the co-payment increase through the duration of the CBA's term, the employer had to maintain the past practice that required employees to pay only a $5.00 co-payment per doctor visit. Thus, the arbitration award ordered the employer to reimburse employees for the incremental increase in co-payments through the end of the contract period.

This appeal comes to us from the Appellate Division's reversal of the Law Division's vacation of the arbitration award. The Appellate Division held that the Arbitrator's construction of the

CBA was reasonably debatable and rejected the Borough's additional claims that the award was illegal.

We affirm the Appellate Division judgment. Because judicial review of an arbitration award is deferential to an arbitrator's conclusions, the instant award must be sustained. The interpretation reached by the Arbitrator of this contract was within the range of what is reasonably debatable. Furthermore, the remedy ordered by the Arbitrator to effectuate her interpretation was neither contrary to existing law nor beyond the scope of what was reasonably debatable. We agree with the appellate panel's conclusion that the additional arguments advanced to overturn the award lack merit.

## I.

### A.

The facts relevant to this appeal can be concisely summarized. The Borough enrolled in the SHBP effective January 2002 for the purpose of providing healthcare coverage to its employees. Pursuant to the then-existing SHBP medical coverage programs, from 2002 through the end of 2006, PBA members participating in the SHBP's NJ Plus or HMO medical coverage plans paid a $5.00 co-payment for each doctor's office visit. On September 14, 2006, Horizon Blue Cross Blue Shield of New Jersey, Administrator of the SHBP, notified the Borough of rate changes for 2007. The notice stated that, effective January 1, 2007, the co-payment requirement was increased by action of the Commission to $10.00 per office visit.

When that increase was put into effect, the existing CBA between the PBA and the Borough covered the period from January 1, 2005, through December 31, 2009. Several provisions of the CBA pertinent to this appeal are included here in their entirety.

Article 29 addresses "Medical and Insurance Coverage" and provides in part:

29.01 The Borough will continue to provide and pay for existing Medical and prescription plans and coverage for Employees covered by this Agreement and their families. Any change in carrier or source of coverage shall result in equal or better coverage.

29.01 (a) A Three ($3.00) Dollar Co–Payment will be attached to the Prescription Insurance Plan, per prescription.

29.02 All increases in premiums during the term of this Agreement shall be borne entirely by the Borough pursuant to present practice.

Article 7 covers "Preservation of Rights." It specifies in pertinent part:

7.02 Nothing contained herein shall be construed to deny or restrict the Borough of its rights, responsibilities and authority, under R.S. 11.40 and 40A, or any other national, state, country, or other applicable laws.[1]

7.03 The Borough agrees that all benefits, terms and conditions of employment relating to the status of Employees, which benefits, terms and conditions of employment are not specifically set forth in this Agreement, shall be maintained at not less than the highest standards in effect at the time of the commencement of the collective bargaining negotiations between the parties leading to the execution of this Agreement.

7.04 Unless a contrary intent is expressed in this Agreement, all existing benefits, rights, duties, obligations and conditions of employment applicable to any Employee pursuant to any rules, regulations, instruction, directive, memorandum, practice, statute or otherwise shall not be limited, restricted, impaired, removed or abolished.

In addition, Article 5, Section 5.01, titled "Existing Law," states, "[t]he provisions of this Agreement shall be subject to [and] subordinate to and shall not annul or modify existing applicable provisions of State or Federal Laws."

Finally, Article 36 covers grievance procedures under the CBA. Under Section 36.02, a "grievance" is

any complaint, difference or dispute between the Borough and any Employee with respect to the interpretation, application or violation of any of the provisions of [the CBA] or any rule or regulation or policies, agreements or administrative decisions affecting any Employee(s) covered by this agreement.

The settlement of grievances follows a multistep procedure that leads to binding arbitration provided no earlier resolution is achieved. If the parties seek resolution of a grievance through

---

1 The reference to "R.S. 11.40" is unclear and, in any event, is irrelevant to the analysis.

arbitration, the CBA provides that "[t]he arbitrator shall have no authority to add to or subtract from the agreement."

We turn next to the history that led this matter to this Court.

## B.

When notified of the change in the required co-payment, the PBA filed a grievance seeking reimbursement for the monetary difference between the previous co-payment amount and the increased amount. The Borough denied the grievance, and the PBA demanded arbitration.

The Borough filed a scope of negotiations petition with the New Jersey Public Employment Relations Commission (PERC) in response to the demand for arbitration, arguing that reimbursing PBA members for the $5.00 increase was preempted by statutory provisions governing the SHBP.[2] Specifically, the Borough relied on a 2007 amendment to an SHBP statute. The relevant statutory provision, which addresses contracts purchased by the Commission and provided to SHBP plan participants, states in part:

> The contract or contracts purchased by the [Commission] ... shall include the following provisions regarding reimbursements and payments:
>
> (1) In the successor plan, the co-payment for doctor's office visits shall be $10 per visit with a maximum out-of-pocket of $400 per individual and $1,000 per family for in-network services for each calendar year.
>
> [*L.* 2007, *c.* 103, § 23 (effective June 27, 2007) (codified at *N.J.S.A.* 52:14–17.29(C)).]

The Sponsors' Statements explained that the amendments "reflect changes to the [SHBP] to be implemented as the result of binding collective negotiations agreements between the Executive branch and collective bargaining units representing State employees." Assemb. 5005 (*Sponsors' Statement*), 212th Leg. (N.J. June 18,

---

2 While PERC's decision was pending, the Borough also requested that the Commission address whether the SHBP permitted reimbursement of the increased co-payment. As of the date that the arbitrator's award and opinion issued, no response had been issued by the Commission.

2007); S. 3004 (*Sponsors' Statement*), 212th Leg. (N.J. June 18, 2007).[3]

On September 25, 2008, PERC denied the Borough's request to restrain arbitration, explaining that

[t]o restrain arbitration, we would have to first conclude that the PBA is not entitled to pursue its claim that the Borough was obligated to maintain a contractual level of benefits. Such a holding would be a departure from well-established case law. Purchasing insurance from the SHBP does not insulate an employer from enforcement of an agreement over a level of health benefits. Absent a preemptive statute or regulation not present here, an employer must reconcile its contractual obligations with its choice of health insurance providers.

PERC also noted that, should the Arbitrator find a contractual violation, the Borough could refile its scope petition to determine the negotiability of any remedy authorized by the Arbitrator because "an arbitrator cannot order the employer to continue the previous co-pay levels for NJ PLUS and HMO office visits since the [Commission] has exercised its authority to set higher levels." The Borough appealed PERC's determination and the Appellate Division affirmed in an unpublished decision rendered after the Arbitrator entered her award in the instant matter. Thus, while the Borough's appeal from the PERC determination was pending, the arbitration in this matter proceeded.

The arbitration hearing covered three issues: whether the PBA's grievance was arbitrable; whether the Borough violated the CBA when it raised the co-payment; and in the event the

---

[3] The Fiscal Estimate prepared by the Office of Legislative Services mirrors the same understanding:

[T]his bill amends the SHBP.... For State employees, most of the medical plan cost savings known at this time will come from other plan changes (such as increases in office visit and emergency room co-pays). The primary source of State savings is, therefore, *attributable to negotiated increases in office visit* and prescription drug *co-pays* and employee cost sharing.

[S. 3004 (*Legis. Fiscal Estimate*), 212th Leg. (N.J. July 9, 2007) (emphasis added); Assemb. 5005 (*Legis. Fiscal Estimate*), 212th Leg. (N.J. July 9, 2007).]

Senate and Assembly Committee Reports expressed similar sentiments. *See* Assemb. 5005 (*Sponsors' Statement*), 212th Leg. (N.J. June 18, 2007); S. 3004 (*Sponsors' Statement*), 212th Leg. (N.J. June 18, 2007).

Borough's actions amounted to a contractual violation, the nature of the appropriate remedy. The Arbitrator issued her decision on December 29, 2009, two days before the CBA expired.

She found that "a grievance alleging a change in a negotiated level of benefits" was arbitrable, explaining that "the level of health benefits is mandatorily negotiable" except "where a statute or regulation preempts negotiations over health benefits." She determined, consistent with PERC's determination, that there was no preempting statute or regulation in this case.

The Arbitrator then reviewed Section 29.01, which provides that "any change in carrier or source of [insurance] coverage shall result in equal or better coverage," and determined that it was not helpful to the Borough's position that the Borough could bear no responsibility for the change in co-payment requirements. She stated,

[e]ven if there was no change in source of coverage and no change in the names of the plans that the Employer offered, under the negotiated language, the Borough remained contractually obligated to provide its employees the medical insurance benefits, including the required co-payments, that it was providing in 2005.

The Borough argued that had the parties agreed for the Borough to shoulder the cost of a co-payment increase, Section 29.02, which states that "[a]ll increases in premiums during the term of [the CBA] shall be borne entirely by the Borough pursuant to present practice," would have reflected such intent. Instead, Section 29.02 only imposed an obligation to cover premium increases. The Arbitrator interpreted the CBA differently, finding the argument unavailing in light of the "Preservation of Rights" in Article 7, which states that benefits, terms, and conditions of employment not specifically set forth in the CBA shall be maintained at the highest standard in effect at the commencement of bargaining negotiations leading to the execution of the CBA.

Ultimately, the Arbitrator concluded that the CBA was violated when PBA members were required to pay the increased · co-payment. She further determined that it was beyond the scope of her authority to restore the $5.00 co-payment and that it was the

parties' prerogative to renegotiate the CBA's medical insurance provision. However, she found "no legal or contractual reason" that prevented her from "direct[ing] the Borough to reimburse the employees for the amount of the [increased] co-payments" for the duration of the contractual period. She added that the Borough could impose a "reasonable documentation" requirement that compelled bargaining unit employees to support each request for reimbursement.

## C.

The Borough instituted an action in the Law Division seeking to vacate the Arbitrator's award, and the PBA filed an answer and counterclaim seeking to have the award confirmed. The Borough took the position that the CBA expressly made the parties' obligations subordinate to existing law. The PBA argued that the co-payment increase compelled by the Commission did not insulate the Borough from meeting its contractual obligations in the CBA. The trial court held that the award was contrary to *N.J.S.A.* 52:14–17.29(C), violated public policy, exceeded the Arbitrator's authority, was procured by undue means, and was not reasonably debatable. It ordered that the award be vacated.

In addition to relying on *N.J.S.A.* 52:14–17.29(C), the trial court's reasoning focused on *N.J.S.A.* 52:14–17.36 (addressing employer participation in SHBP) and *N.J.S.A.* 52:14–17.29 (identifying those benefits that employer participating in SHBP shall provide to employees), as well as regulatory language in *N.J.A.C.* 17:9–1.4 (stating that to join SHBP employers must adopt Division of Pensions and Benefits form resolution and must comply with Commission rules). The court concluded that

> [s]ince the [Commission] is the responsible agency for administering the [SHBP] and has sole discretion to determine the appropriate level of uniform benefits, especially co-payments for plan participants, as a local participant, the Borough of East Rutherford was obligated to strictly comply with its statutory mandates.

The court viewed the arbitration award as "returning the co-payment to $5." It ordered the award to be vacated because the

Arbitrator "award[ed] a remedy that contravenes the [SHBP] statutes requiring a $10 co-payment and uniformity of benefits."

In addition, the court determined that the award was procured by undue means because the Arbitrator misapplied the law to the facts in violation of Article 5 (Existing Law), and the award impermissibly added terms to the CBA in violation of Article 36 (Grievance Procedure). The court also concluded that the Arbitrator exceeded her authority by finding support for the award in Article 7 (Preservation of Rights), explaining that Article 7 cannot be construed to give employees greater rights than those afforded by statute. Finally, to complete its analysis, the court determined that the Arbitrator's interpretation of the contract was not reasonably debatable because the award did not comply with the limited authority that the CBA conferred on the Arbitrator.

On appeal, the Appellate Division reversed and reinstated the arbitration award in favor of the PBA. The panel was more deferential to the arbitration process, concluding that the arbitration award was not contrary to law or public policy as it did not undermine the Commission's decision to increase the co-payment, and the award was reasonably debatable.

With regard to the Arbitrator's interpretation of the CBA's provisions, the panel explained that the "CBA's requirement that the agreement conform to existing law" does not "automatically require that the PBA's members bear the consequences of a future change in law that adversely affects their interests if a 'preservation of rights' clause otherwise protects them." According to the panel, the $5.00 co-payment in place before the statutory increase "constituted a past practice that constituted an implied term of the CBA." According to the panel, the arbitration award did not modify the new $10.00 co-payment requirement. That new amount continued to be uniformly applied to both State employees and members of the PBA, and thus, the award "imposed no fiscal impact on the SHBP." However, the reimbursement remedy ordered by the Arbitrator, in the panel's view, merely restored "the standard at the commencement of the collective bargaining negoti-

ations" and ensured that existing benefits were not "limited, restricted, impaired, removed or abolished."

We granted the Borough's petition for certification. *Borough of E. Rutherford v. E. Rutherford PBA Local 275*, 208 *N.J.* 371, 29 *A.*3d 743 (2011). The Court also granted *amicus curiae* status to the New Jersey State League of Municipalities (NJSLM) and its affiliate, the New Jersey Institute of Local Government Attorneys (NJILGA).

## II.

Arbitration is a favored form of dispute resolution, whose usefulness for labor-management issues is well-recognized in this state. *See Middletown Twp. PBA Local 124 v. Twp. of Middletown*, 193 *N.J.* 1, 10, 935 *A.*2d 516 (2007). Consistent with the salutary purposes that arbitration as a dispute-resolution mechanism promotes, courts grant arbitration awards considerable deference. "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." *Ibid.* (internal quotation marks omitted). We have stated that "[a]rbitration should spell litigation's conclusion, rather than its beginning," *N.J. Tpk. Auth. v. Local 196, I.F.P.T.E.*, 190 *N.J.* 283, 292, 920 *A.*2d 88 (2007), and that arbitration of public-sector labor disputes, in particular, "should be a fast and inexpensive way to achieve final resolution of such disputes and not merely 'a way-station on route to the courthouse,'" *Policemen's Benevolent Ass'n, Local 11 v. City of Trenton*, 205 *N.J.* 422, 429, 16 *A.*3d 322 (2011) (quoting *N.J. Office of Emp. Relations v. Commc'ns Workers of Am.*, 154 *N.J.* 98, 111, 711 *A.*2d 300 (1998)). Thus, arbitration awards are given a wide berth, with limited bases for a court's interference.

Generally, when a court reviews an arbitration award, it does so mindful of the fact that the arbitrator's interpretation of the contract controls. "Under the 'reasonably debatable' standard, a court reviewing [a public-sector] arbitration award 'may not substitute its own judgment for that of the arbitrator, regard-

less of the court's view of the correctness of the arbitrator's position.'" *Middletown Twp., supra,* 193 *N.J.* at 11, 935 *A.*2d 516 (quoting *N.J. Transit Bus Operations v. Amalgamated Transit Union,* 187 *N.J.* 546, 554, 902 *A.*2d 209 (2006)). Courts are not to "second-guess" an arbitrator's interpretation, *State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195,* 169 *N.J.* 505, 514, 780 *A.*2d 525 (2001) (internal quotation marks omitted), because

> the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
>
> [*Weiss v. Carpenter, Bennett & Morrissey,* 143 *N.J.* 420, 433, 672 *A.*2d 1132 (1996) (quoting *United Steelworkers v. Enter. Wheel & Car Corp.,* 363 *U.S.* 593, 599, 80 *S.Ct.* 1358, 1362, 4 *L.Ed.*2d 1424, 1429 (1960)).]

That said, there exist four statutory bases for vacating an arbitration award. Under the New Jersey Arbitration Act, a court may vacate an award

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing ... or in refusing to hear evidence ... or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [*N.J.S.A.* 2A:24–8.]

Additionally, "a court 'may vacate an award if it is contrary to existing law or public policy.'" *Middletown Twp., supra,* 193 *N.J.* at 11, 935 *A.*2d 516 (quoting *Local 196, supra,* 190 *N.J.* at 294, 920 *A.*2d 88). However, "[r]eflecting the narrowness of the public policy exception, that standard for vacation will be met only in *rare circumstances.*" *Local 196, supra,* 190 *N.J.* at 294, 920 *A.*2d 88 (internal quotation marks omitted). The arbitrator's award— "and not the conduct or contractual provision prompting the arbitration"—is the focus of that review. *Id.* at 296, 920 *A.*2d 88. Public policy is ascertained by "reference to the laws and legal precedents and not from general considerations of supposed public

interests." *Weiss, supra,* 143 *N.J.* at 434–35, 672 *A.*2d 1132 (quoting *W.R. Grace & Co. v. Rubber Workers,* 461 *U.S.* 757, 766, 103 *S.Ct.* 2177, 2183, 76 *L.Ed.*2d 298, 307 (1983)); *Middletown Twp., supra,* 193 *N.J.* at 11, 935 *A.*2d 516. And, even when the award implicates a clear mandate of public policy, the deferential "reasonably debatable" standard still governs. *Weiss, supra,* 143 *N.J.* at 443, 672 *A.*2d 1132. Thus, "[i]f the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." *Ibid.* As we explained in *Weiss,*

[a]ssuming that the arbitrator's award accurately has identified, defined, and attempted to vindicate the pertinent public policy, courts should not disturb the award merely because of disagreements with arbitral fact findings or because the arbitrator's application of the public-policy principles to the underlying facts is imperfect.

[*Ibid.*]

### III.

### A.

■ With respect to the statutory grounds relied on for vacation of the instant arbitration award, the Borough's arguments center on *N.J.S.A.* 2A:24–8(a), that the arbitration award was procured by undue means, and *N.J.S.A.* 2A:24–8(d), that the Arbitrator exceeded her authority. " '[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record," whereas an arbitrator exceeds his or her "authority by disregarding the terms of the parties' agreement." *Office of Emp. Relations, supra,* 154 *N.J.* at 111–12, 711 *A.*2d 300. In this matter, there is no assertion that the Arbitrator engaged in any fraud, corruption, or misconduct during the arbitration. Therefore, we do not address those statutory standards.

■ With respect to the statutory grounds advanced to support vacation of the arbitration award, none of the Borough's arguments have merit. The Arbitrator applied the relevant contractu-

al provisions in the CBA to the increased co-payment. In particular, the Arbitrator focused on the express language of Article 7.03 of the CBA, namely that "all benefits, terms and conditions of employment ... *shall be maintained at not less than the highest standards* in effect at the time of the commencement of the collective bargaining negotiations." (emphasis added). In interpreting and applying the plain language of that provision, the Arbitrator determined that an increased co-payment did not maintain the benefits available to PBA members at the time that the CBA took effect, contrary to the contractual promise contained in Article 7.03. The Arbitrator characterized the former level of co-payment required of PBA members as a past practice between the Borough and the PBA, a characterization that was not unreasonable. Further, the Arbitrator's ultimate conclusion that the prior existing co-payment obligation must be maintained was not an unfair or unreasonable interpretation and application of the Preservation of Rights language of the agreement.

Moreover, the Arbitrator recognized the limits of what could be an appropriate remedy, noting that she "lack[ed] the authority to order the Borough to restore the $5 co-pay ... because the State Health Benefits Commission ha[d] exercised its authority to set the co-pay at a higher level." That said, the Arbitrator concluded that there was "no legal or contractual reason why [she could not] direct the Borough to reimburse the employees for the amount of the co-payments in excess of $5," as damages for the contractual violation. In fact, the Arbitrator determined that she could not find any provision in the CBA that limited arbitral authority to award such a remedy for the damages incurred. Although Article 36 prohibited the Arbitrator from adding to or subtracting from the CBA, and Article 29 specifically addressed only the Borough's obligation to bear increases with respect to premiums, the Arbitrator concluded that those provisions did not constitute the equivalent of a CBA provision prohibiting an arbitrator from fashioning the specific make-whole remedy developed here. *Cf. Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Servs.*, 96 *N.J.* 442, 451–53, 476 *A.*2d 777 (1984) (reviewing CBA that

circumscribed arbitrator's substantive authority to award back-pay damages).

This Court previously has addressed "the need for a flexible approach to an arbitrator's authority with regard to remedies," stating that

[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.* There the need is for *flexibility* in meeting a wide variety of situations. *The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.*

[*Local 195, supra,* 169 *N.J.* at 520–21, 780 *A.*2d 525 (emphasis in original) (quoting *United Steelworkers, supra,* 363 *U.S.* at 597, 80 *S.Ct.* at 1361, 4 *L.Ed.*2d at 1428).]

Indeed, the *Local 195* decision explicitly recognized that arbitrators must have the ability in appropriate circumstances to award make-whole monetary damages for certain contract violations, premised on the basic conferral of power to the arbitrator to resolve the dispute. *Id.* at 521, 780 *A.*2d 525 (citing Elkouri & Elkouri, *How Arbitration Works* 579–80 (Martin M. Volz & Edward P. Goggin eds., 5th ed.1985)). Expanding on that logic, we explained that "[t]o restrict arbitrators to remedies specifically set forth in the contract would negate arbitration as a method of dispute settlement or would result in cluttering contracts with numerous liquidated damages provisions that would invite more trouble than they could prevent." *Ibid.*

When considering the remedy fashioned by the Arbitrator here, the award was not inconsistent with any of the CBA's provisions, individually or taken as a whole. The Arbitrator articulated a contractual basis to support her decision that the agreement had been violated and to explain how her remedy was not inconsistent with the CBA's provisions. As did the Appellate Division, we conclude that the Arbitrator's remedy did not clash with the CBA's provisions. Thus, we reject the arguments that the Arbitrator's award must be vacated as based on undue means, *N.J.S.A.* 2A:24–8(a), or because the Arbitrator exceeded her authority, *N.J.S.A.* 2A:24–8(d). The Borough fails to meet the standards for

the vacation of an arbitration award under those statutory provisions.

Assuming one could conclude that the Arbitrator reached a decision that was not the result of the better of two arguments based on the CBA's language, the outcome here was at least reasonably debatable. Thus, even if the remedy the Arbitrator fashioned was not the preferred or correct outcome, a reversal would be contrary to the deferential standard for reviewing arbitral decisions. *See Weiss, supra,* 143 *N.J.* at 433, 672 *A.*2d 1132 (noting that court should not overrule arbitration award merely because court's opinion differs from arbitrator's decision). In sum, the arguments that the award was procured by undue means or that the Arbitrator exceeded her authority fail to meet the statutory standards for vacation of an arbitration award.

B.

We turn next to the Borough's arguments that the arbitration award violates law and public policy. These arguments also fail to withstand scrutiny because it cannot be said that the arbitration award clearly violates or undermines implementation of the SHBP.

Under the Arbitrator's award, employees covered by the CBA were still required to make the $10.00 co-payment, thus meeting the literal SHBP requirement of a co-payment of $10.00 at the time of each doctor visit.[4] To be sure, the arbitration award would have a financial impact on the Borough until it was able to renegotiate a new CBA to take effect after December 31, 2009, when the existing CBA's effective term expired. However, an arbitration award's imposition of a make-whole financial damages remedy—not expressly contractually or statutorily prohibited—for

---

[4] In addition, as noted by the Appellate Division, the award had no effect on PBA members' conduct because the Arbitrator's decision issued within days of the expiration of the contract term. The employees were required to pay the enhanced co-payment without knowledge of the outcome to the arbitration.

a contract violation does not, in and of itself, justify the vacation of the award. That would contravene the highly deferential standard in place for review of arbitration awards. Moreover, such a result would have an additional negative repercussion. If the imposition of an asserted "financially burdensome" damages remedy were to become a determinative factor when reviewing an arbitration award, the losing party in an arbitration imposing financial damages would almost invariably seek vacation of the award. The deferential standard of review is intended, in part, to deter such litigation. *See Local 196, supra*, 190 *N.J.* at 292, 920 *A.*2d 88.

With respect to the Borough's argument that the SHBP co-payment increase superseded and nullified contractual provisions in the CBA, and specifically the Preservation of Rights provisions, the reasonably debatable standard applies and controls the outcome on this as well. The Borough's argument, while plausible, was not the only reasonable conclusion to be reached. The Arbitrator's analysis of the SHBP co-payment increase and the CBA's provisions led her to a different conclusion, and her interpretation satisfies the reasonably debatable standard. The framework for reviewing a public-sector arbitration award accounts for the interplay between the SHBP and the CBA by requiring a reviewing court to determine whether the arbitration award actually causes direct contradiction with law or public policy. *Id.* at 293–94, 920 *A.*2d 88. We fail to see that this arbitration award met the demanding standard of a direct conflict between law and public policy on the one hand and the award's make-whole remedy on the other. Employees remained obligated under the award to adhere to the increased co-payment amount of $10.00 for each doctor's office visit.

Indeed, we emphasize that our review of this arbitration award does not, and may not, include application of the later 2010 statutory amendment to the SHBP. *See L.* 2010, *c.* 2, § 8 (adding section b. to *N.J.S.A.* 52:14–17.36 and expressly making state-negotiated changes to SHBP plan conditions applicable to all plan participants "at the same time and in the same manner as to State

employees"). The 2010 amendment was not effective during the CBA's term, which ran from January 1, 2005, through December 31, 2009. Rather, the 2007 amendments were in existence, and those amendments had the effect of altering the requirements for SHBP purchased contracts with provider organizations. Included in those changed requirements was the provision increasing co-payments to $10.00 in such contracts. We find an important distinction between the 2007 amendment and the 2010 amendment. Although we do not address the meaning or effect of the 2010 amendment because it is not before us, we note that it expressly addresses mid-contract changes in plan conditions in a way that the 2007 amendment simply did not; the 2007 amendment did not include any language addressing application of changed plan conditions to local employers who were in the midst of contracts containing Preservation of Rights clauses, among others, that the arbitrator here was called on to interpret and apply. The 2007 amendment did not clearly preclude the arbitral remedy awarded here, as the dissent suggests. *See post* at 210–11, 61 *A*.3d at 953–54. The argument claiming otherwise is misplaced, for it is premised on the replacement of the standard for review of awards that intersect with public-policy questions from the current "illegality" threshold to one that would examine for "correctness." *Post* at 211, 61 *A*.3d at 954.[5]

In sum, the Arbitrator strove to interpret the CBA within the bounds set by law, and neither her interpretation of the CBA nor the remedy she fashioned was unreasonable. Regardless of whether a reviewing court would have reached the same result in

---

[5] As *Weiss, supra,* made clear, the correct standard of review, which is applicable when a court is asked to confirm an arbitration award interpreting and applying rights under a CBA that implicate a question of public policy, requires only examination for the *"lawfulness of its enforcing* the award and not with the *correctness of the arbitrator's* decision." 143 *N.J.* at 443, 672 *A*.2d 1132 (internal quotation marks and citation omitted). "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." *Ibid.* Review in this appeal must adhere to that well-established standard.

the first instance, the award survives scrutiny under the reasonably debatable standard that controls the review of public-sector arbitration awards. The "reasonably debatable" standard embodies this Court's deference to the arbitral process for public-sector labor disputes. *See Policemen's Benevolent Ass'n, supra,* 205 *N.J.* at 428–29, 16 *A.*3d 322 ("The well-established standard . . . is that an arbitrator's award will be confirmed so long as the award is reasonably debatable." (internal citation and quotation marks omitted)); *Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko,* 202 *N.J.* 268, 276, 997 *A.*2d 185 (2010) (stating same). We conclude that the Arbitrator's award interpreting and reconciling the CBA provisions and then-existing law was reasonably debatable, which renders it impervious to second-guessing by the courts. We add only that there need not be any realistic fear that the legislative policy embodied in the 2007 amendment is "effectively undone" by the arbitral award we affirm, *see post* at 216–17, 61 *A.*3d at 958, since the award's application was limited to the interval of time until expiration of the CBA that engendered this review.

Arbitration simply is not a mere gateway to the courthouse. The resolution of arbitrated disputes should ordinarily end with the conclusion of the arbitration. Such an approach gives credence to the notion that arbitration provides a straightforward and effective way to resolve legal matters. That is particularly so in the case of public-sector labor disputes. Parties that agree to arbitrate contractual disputes must recognize that courts give arbitrators significant discretion to make reasoned conclusions based on interpretations of the contractual language and the relevant law. The mere fact that this Court or any other court may disagree with an arbitrator's decision is not sufficient to overturn an arbitration award.

## IV.

In conclusion, the Arbitrator's award was reasonably debatable, was not procured by undue means, and was not contrary to law or

public policy. Therefore, the judgment of the Appellate Division reinstating the arbitration award is affirmed.

Justice PATTERSON, dissenting.

The majority affirms the Appellate Division panel's judgment upholding the arbitration award as a "reasonably debatable" construction of the parties' collectively bargained agreement (CBA). *Ante* at 193–94, 61 *A*.3d at 943–44. It endorses the arbitrator's mandate that the $5.00 increase in employee co-payment per doctor visit for participants in the State Health Benefits Program (SHBP), required by *N.J.S.A.* 52:14–17.29(C), should be paid by the Borough of East Rutherford (Borough), not by the covered employees as the statute envisions. *See ante* at 206–08, 61 *A*.3d at 951–52. Because the CBA subordinates the parties' agreement to governing law, because the 2007 amendments to the SHBP clearly reflect the Legislature's determination that local employees participating in the SHBP assume a greater share of their healthcare costs in the form of an increased co-payment, and because the 2007 amendments furthered an important legislative policy, I cannot accept the arbitrator's decision as a "reasonably debatable" interpretation of the CBA. I consider the award to directly contravene the terms of the CBA and the letter and policy goals of *N.J.S.A.* 52:14–17.29(C). Accordingly, I would reverse the determination of the Appellate Division, and I respectfully dissent.

The majority relies upon the deferential "reasonably debatable" standard by which New Jersey appellate courts review public-sector arbitration awards. *Ante* at 207–08, 61 *A*.3d at 952. It notes that it is not for this Court to " 'substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.' " *Ante* at 201–02, 61 *A*.3d at 948–49 (quoting *Middletown Twp. PBA Local 124 v. Twp. of Middletown*, 193 *N.J.* 1, 11, 935 *A*.2d 516 (2007)). That principle is, indeed, firmly entrenched in our law. *Policemen's Benevolent Ass'n v. City of Trenton*, 205 *N.J.* 422, 432–33, 16 *A*.3d 322 (2011);

*Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko,* 202 *N.J.* 268, 276–77, 997 *A.*2d 185 (2010); *N.J. Tpk. Auth. v. Local 196, I.F.P.T.E.,* 190 *N.J.* 283, 292–94, 920 *A.*2d 88 (2007). It is, however, important to recognize that this case does not turn on a nuanced exploration of past practice or contract interpretation as to which a seasoned arbitrator, specializing in labor disputes, has decades of experience. Instead, the question before the Court is an issue of law—the construction and application of *N.J.S.A.* 52:14–17.29(C). The legal determinations of our trial judges, who are constitutionally charged with the responsibility to interpret and apply our laws, are reviewed de novo on appeal. *City of Atl. City v. Trupos,* 201 *N.J.* 447, 463, 992 *A.*2d 762 (2010); *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.,* 202 *N.J.* 369, 382–83, 997 *A.*2d 954 (2010); *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). I respectfully submit that an arbitration award premised upon a legal conclusion, such as the award reviewed today, should likewise not be sustained unless the appellate court determines that the arbitrator has correctly interpreted the law. *See Weiss v. Carpenter, Bennett & Morrissey,* 143 *N.J.* 420, 443, 672 *A.*2d 1132 (1996) ("arbitrators cannot be permitted to authorize litigants to violate either the law or those public-policy principles that government has established by statute, regulation or otherwise for the protection of the public").

This Court has recognized that the "reasonably debatable" standard has meaningful parameters; if an award implicates public policy concerns, this Court has required "careful scrutiny of the award, in the context of the underlying public policy, to verify that the interests and objectives to be served by the public policy are not frustrated and thwarted by the arbitral award." *Ibid.; see also Linden, supra,* 202 *N.J.* at 278–79, 997 *A.*2d 185; *Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris,* 100 *N.J.* 383, 393, 495 *A.*2d 865 (1985); *Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Servs.,* 96 *N.J.* 442, 451–53, 476 *A.*2d 777 (1984).

*N.J.S.A.* 2A:24–8(d) authorizes the vacation of an arbitration award if the arbitrator exceeds his or her authority. *Commc'ns Workers, supra,* 96 *N.J.* at 453, 476 *A.2d* 777. The statutory standard entails a two-part inquiry: (1) whether the agreement authorized the award, and (2) whether the arbitrator's action is consistent with applicable law. *See id.* at 451–53, 476 *A.2d* 777. In addition to the statutory grounds, an arbitration award may be vacated " 'if it is contrary to existing law or public policy.' " *Ante* at 202, 61 *A.*3d at 949 (quoting *Middletown Twp., supra,* 193 *N.J.* at 11, 935 *A.2d* 516); *accord Borough of Glassboro v. Fraternal Order of Police, Lodge No. 108,* 197 *N.J.* 1, 9–10, 960 *A.2d* 735 (2008); *Weiss, supra,* 143 *N.J.* at 429–30, 672 *A.2d* 1132.

Application of those standards to this case clearly supports the trial court's decision vacating the arbitration award. In the CBA itself, the parties acknowledged that their agreement was subject to governing law. Article 5, Section 5.01, entitled "Existing Law," provided that "[t]he provisions of this Agreement shall be subject to [and] subordinate to, and shall not annul or modify existing applicable provisions of State or Federal Laws." Further, Article 7, Section 7.02 precluded the CBA from being construed "to deny or restrict the Borough of its rights, responsibilities and authority, under R.S. 11.40 and 40A, or any other national, state, country, or other applicable laws." No provision of the CBA exempted the $5.00 co-payment per office visit from the impact of governing state law.[1] Thus, the CBA expressly recognized that its provisions would be enforceable only to the extent to which they conformed to New Jersey statutory and case law.

Furthermore, the increased co-payment required of local, as well as State, public employees was a prominent feature of the 2007 SHBP amendments passed by the Legislature and signed into law by then-Governor Corzine. *See N.J.S.A.* 52:14–17.25 to –

---

[1] The $5.00 co-payment for physician office visits was not expressly set forth in any provision of the CBA. However, it was found by the arbitrator to be an existing benefit of employment within the meaning of Section 7.04. *Ante* at 200, 61 *A.*3d at 948.

17.46a. Those amendments followed the 2006 publication of the Joint Legislative Committee on Public Employee Benefits Reform Final Report (Report), which stated that its "investigation of health benefits issues revealed a system plagued by the skyrocketing costs of health care." J. Leg. Comm. on Pub. Emp. Benefits Reform, *Final Report*, 212th Leg., at 57 (N.J. Dec. 1, 2006). The Report recognized the importance of extending health benefits reform to local employees enrolled in the SHBP, noting that the Committee's Benefits Review Task Force "urged that SHBP apply changes in benefits resulting from the State's collective bargaining agreements to participating local employers, which include increasing managed care office visit and prescription co-pays." *Id.* at 52.[2] To that end, the Committee noted:

The Joint Committee believes that it is important that SHBP benefits changes negotiated by the State with its employees be applicable to employees of local employers not only to reduce administrative expenses for all through conformity but also to extend to those local employers the same cost savings enjoyed by the State. The Joint Committee believes that it is important to ensure consistency in health benefit coverage and cost for all public employees.

[*Id.* at 121–22.]

The statutory amendments to the SHBP substantially adopted the Joint Committee's recommendations. The Legislature unambiguously prescribed a $10.00 co-payment as a component of a "successor plan" providing health benefits to participants in the SHBP.[3] *N.J.S.A.* 52:14–17.29(C) provides in relevant part:

The contract or contracts purchased by the [New Jersey Public Employment Relations Commission] . . . shall include the following provisions regarding reimbursements and payments:

---

[2] *N.J.S.A.* 52:14–17.34 provides that "[i]n order that the [SHBP Act] may be extended to include other public employees, participation by counties, municipalities, public agencies or organizations . . . is hereby authorized."

[3] *N.J.S.A.* 52:14–17.26(j) defines a "successor plan" as "a State managed care plan that shall replace the traditional plan and that shall provide benefits as set forth in [*N.J.S.A.* 52:14–17.29] with provisions regarding reimbursements and payments as set forth in [*N.J.S.A.* 52:14–17.29(C)]."

(1) In the successor plan, the co-payment for doctor's office visits shall be $10 per visit with a maximum out-of-pocket of $400 per individual and $1,000 per family for in-network services for each calendar year.

The higher co-payment amount required of State employees covered by the SHBP was identified by the Legislature as a critical cost-saving measure of the 2007 reforms:

[W]hile there are savings associated with the elimination of the Traditional Plan [for healthcare contracts] and the elimination of the gatekeeper in [the NJ PLUS healthcare plan], which has a much larger State employee enrollment, there are expected offsetting costs. For State employees, most of the medical plan cost savings known at this time will come from other plan changes (such as increases in office visit and emergency room co-pays). The primary source of State savings is, therefore, attributable to negotiated increases in office visit and prescription drug co-pays and employee cost-sharing.

[S. 3004 (*Legis. Fiscal Estimate*), 212th Leg. (N.J. July 9, 2007); Assemb. 5005 (*Legis. Fiscal Estimate*), 212th Leg. (N.J. July 9, 2007).]

Thus, the cost-saving benefits of the 2007 amendments to the SHBP were substantially premised upon the Legislature's mandate that covered employees pay the increased co-payment prescribed by statute.

As the majority notes, it was not until 2010, in its comprehensive pension and healthcare benefits reform, *L.* 2010, *c.* 2, § 8, that the Legislature expressly directed that healthcare benefit changes, negotiated by the State, would apply to local employees participating in the SHBP in precisely the same manner as they would to State employees.[4]  *Ante* at 207–08, 61 *A.*3d at 952–53. However, even in the more limited 2007 health benefit reforms, the Legislature did not authorize local public employers and employees to agree upon a co-payment amount other than the statutory $10.00 figure in the collective bargaining process. In a provision in effect both before and after the 2007 amendments, the Legislature specifically identified two components of the SHBP that could be

---

[4] In 2010, the Legislature added *N.J.S.A.* 52:14–17.36(b), providing in part that "[a]ll changes in the provision of health care benefits through the program that are included in collective negotiations agreements between the State and its employees entered into on or after the effective date of P.L.2010, c. 2 shall be made applicable by the commission to participating employers and their employees at the same time and in the same manner as to State employees."

varied as the result of collective bargaining by local public employers and their employees, neither of them relevant here:

> Notwithstanding the provisions of any other law to the contrary, the obligations of a participating employer other than the State to pay the premium or periodic charges for health benefits coverage provided under [*N.J.S.A.* 52:14–17.25 to – 17.46a] may be determined by means of a binding collective negotiations agreement.
>
> [*N.J.S.A.* 52:14–17.38(a).]

The limitation of this provision to the employer's "obligations ... to pay the premium or periodic charges for health benefits coverage," *ibid.*, which clearly excludes office visit co-payments, is significant for purposes of statutory construction. This Court traditionally applies the principle of "*expressio unius est exclusio alterius*—expression of one thing suggests the exclusion of another left unmentioned[.]" *Brodsky v. Grinnell Haulers, Inc.,* 181 *N.J.* 102, 112, 853 *A.2d* 940 (2004). When the Legislature creates an exhaustive list, it is assumed to intend to exclude what is not enumerated unless it indicates by its language that the list or section is not meant to be exhaustive or exclusive. *See Shapiro v. Essex Cnty. Bd. of Chosen Freeholders,* 183 *N.J.Super.* 24, 26, 443 *A.2d* 219 (App.Div.), *aff'd,* 91 *N.J.* 430, 453 *A.2d* 158 (1982); *Trautmann ex rel. Trautmann v. Christie,* 418 *N.J.Super.* 559, 566–67, 15 *A.3d* 22 (App.Div.2011), *aff'd,* 211 *N.J.* 300, 48 *A.3d* 1005 (2012). No such caveat appears in *N.J.S.A.* 52:14–17.38(a). Had the Legislature intended to permit local public employers and their employees to agree upon a co-payment amount other than the $10.00 statutory co-payment through the collective bargaining process, it would have so stated. Instead, it prescribed that specific $10.00 amount, as a pivotal component of a successor plan, in *N.J.S.A.* 52:14–17.29(C).[5]

---

[5] As the New Jersey School Boards Association noted in its analysis of the 2007 SHBP amendments, "the amount of deductibles and co-pays" was among the issues "preempted from local negotiations for participants in the State Plan." New Jersey School Boards Association, *Controlling the Cost of Insurance,* The Negotiations Advisor: Legislation Analysis, Winter 2009, at 6–7.

In short, there is ample evidence that the Legislature intended to increase participating local employees' physician co-payments from $5.00 to $10.00 per visit, up to per-individual and per-family limits, without exception. In so doing, the Legislature sought to transfer a portion of the economic burden of public employee healthcare from the municipality and its taxpayers to the participating employee, and to promote uniformity in public employee healthcare policy.

For the Borough and the employees at issue, the arbitration award upheld today reverses that legislative initiative and violates a "clear mandate of public policy." *N.J. Tpk. Auth., supra*, 190 *N.J.* at 294, 920 *A.*2d 88. Accordingly, I respectfully submit that the arbitration award was properly vacated by the trial court under *N.J.S.A.* 2A:24–8(d), on the grounds that it exceeded the arbitrator's authority. Applying the first factor of the two-part standard set forth by this Court in *Communications Workers, supra*, 96 *N.J.* at 448, 476 *A.*2d 777, the arbitrator's award was unauthorized by the parties' CBA, which recognized in Article 5, Section 5.01, that even its express terms were subject to governing state law. Contravening Article 7, Section 7.02, the award deprives the Borough "of its rights, responsibilities and authority, under ... state, country or other applicable laws." It thus violates the terms of the agreement itself.

Turning to the second prong of the *Communications Workers* test, applicable in the public employment setting, the arbitration award at issue here is inconsistent with applicable law. *Commc'ns Workers, supra*, 96 *N.J.* at 452, 476 *A.*2d 777. By compelling the Borough to pay the $5.00 increase in office visit co-payments, the award flouted the Legislature's unambiguous direction that local public employees participating in the SHBP be charged a co-payment for doctor's office visits of "$10 per visit with a maximum out-of-pocket of $400 per individual and $1,000 per family for in-network services for each calendar year." *N.J.S.A.* 52:14–17.29(C)(1). By virtue of the arbitrator's award, confirmed by the majority in this case, the Legislature's effort to reduce the munici-

pality's public employee healthcare burden in this limited respect is effectively undone. In my view, under *N.J.S.A.* 2A:24–8(d) as construed by this Court in *Communications Workers,* the trial court properly vacated the arbitration award on the ground that it exceeded the arbitrator's authority. *Commc'ns Workers, supra,* 96 *N.J.* at 451–53, 476 *A.*2d 777.

Finally, applying the public policy exception, also applicable to public employment arbitrations, the award in this case undermines the policy that prompted the Legislature's reform. *See Weiss, supra,* 143 *N.J.* at 429–30, 672 *A.*2d 1132. It upends the Legislature's effort to shift a portion of the cost of public employee healthcare from local government to covered public employees. Notwithstanding the Legislature's expression of an important policy—to relieve the financial burden imposed on local governments—the arbitration award reimposes that burden upon the Borough and its taxpayers. As such, this case presents precisely the type of rare circumstance where this Court should reverse the arbitrator's decision as contrary to clear mandates of public policy. *See id.* at 430, 672 *A.*2d 1132.

Accordingly, I would reverse the Appellate Division panel's judgment reinstating the arbitration award, and I respectfully dissent.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN and HOENS—4.

*For dissentment*—Justice PATTERSON—1.