**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3469-19

STATE OF NEW JERSEY,
(KEAN UNIVERSITY),

     Plaintiff-Appellant,

v.

COUNCIL OF NEW JERSEY
STATE COLLEGE LOCALS
AFT,

     Defendant-Respondent.

_____

          Argued June 30, 2021 - Decided July 12, 2022

          Before Judges Accurso and DeAlmeida.

          On appeal from the Superior Court of New Jersey,
          Chancery Division, Union County, Docket No. C-
          000011-20.

          Elizabeth A. Davies, Deputy Attorney General, argued
          the cause for appellant (Matthew J. Platkin, Acting
          Attorney General, attorney; Melissa H. Raksa,
          Assistant Attorney General, of counsel; Elizabeth A.
          Davies, on the briefs).

Kevin P. McGovern argued the cause for respondent (Mets Schiro & McGovern, attorneys; Kevin P. McGovern, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

Plaintiff Kean University appeals from a trial court order affirming an arbitration award in favor of defendant Council of New Jersey State College Locals, AFT, AFL-CIO, arguing the award was not reasonably debatable, was procured by undue means, and the arbitrator exceeded and imperfectly executed his powers. We agree the arbitrator exceeded his powers and the award was not reasonably debatable. Thus, we reverse.

The union filed the grievances in this matter in response to Kean's decision to re-assign two tenured professors, one in Art History and the other in Music, from teaching to curriculum development, student advising, and recruitment, in response to falling enrollments in their programs. Kean filed a scope of negotiations petition to restrain arbitration, asserting its decision to reassign the professors to non-teaching duties "based on an educational policy decision" was one within its academic judgment and managerial prerogative and thus non-negotiable. The union countered that Kean was requiring "faculty members to perform new jobs, unrelated to their core teaching

2

function, apparently forever, while also denying them opportunities for research."

In its decision on the petition, the Public Employment Relations Commission noted it has "consistently held that 'the right to assign teachers non-teaching duties is a non-negotiable management prerogative,'" In re Mahwah Bd. of Educ., P.E.R.C. No. 83-96, 9 N.J.P.E.R. ¶14051, 1983 N.J. PERC LEXIS 334 at 3 (1983), although it has "place[d] no limitation on . . . faculty grievance[s] challenging . . . non-teaching reassignment[s] on grounds that same [are] beyond [the grievant's] primary duties," In re Warren Cnty. Cmty. Coll., P.E.R.C. No. 2016-48, 42 N.J.P.E.R. ¶98, 2016 N.J. PERC LEXIS 9 at 23 (2016).  It also noted it has deemed such assignments mandatorily negotiable when they "primarily affect the working hours, workload, or compensation of employees," Mahwah, 9 N.J.P.E.R. at 3, and likewise noted the allocation or rotation of non-teaching duties among teachers is a mandatorily negotiable subject, In re Princeton Reg'l Bd. of Educ., P.E.R.C. No. 2003-15, 28 N.J.P.E.R. ¶33143, 2002 N.J. PERC LEXIS 69 at 9 (2002).

Faced with the parties' conflicting narratives — the union acknowledging the declining enrollments in the Art History and Music

3

programs, while pointing out the University is still offering the courses the grievants formerly taught, and Kean's contention that it chose the grievants for non-teaching duties based on "an educational policy determination centered on reducing student and program impact," while conceding it had originally solicited volunteers for reassignment before conscripting the grievants for the non-teaching assignments — PERC found Kean's articulated reason "of an educational policy rationale" for its selection of the grievants for reassignment "inconclusive."

PERC accordingly restrained arbitration "to the extent that the instant grievances challenge the University's managerial prerogative to assign non-teaching duties" to the grievants. But it permitted arbitration to proceed on the questions of 1) whether "the non-teaching duties" the University assigned the grievants "fall outside the grievants' primary duties"; 2) "[t]he impact of performing non-teaching duties" on the grievants in terms of "compensation, workload, [and] working hours"; and 3) "[i]f the University cannot sufficiently demonstrate that an educational policy rationale was in fact the basis for assigning non-teaching duties to only the grievants," PERC permitted the arbitrator to "proceed to assess the frequency/rotation/allocation of non-teaching duties among employees."

A-3469-19

The arbitrator, however, addressed none of those questions directly in determining the University violated Article XII, Section B.7 and Article XII, Section C.2 of the parties' collective negotiations agreement as the union alleged. Instead, interpreting Article XII, "Faculty Responsibilities," and specifically subsection 7 of section B, "Teaching Responsibilities," which states:

> [a]ssignment of non-teaching duties within load for
> any faculty member, for any purpose, is a matter of
> academic/managerial judgement of the College/
> University

and subsection 2 of section C, "Other Responsibilities," providing in pertinent part that

> [f]aculty responsibilities which have been traditionally
> performed by the faculty and are reasonable and
> consistent with sound academic practice shall be
> continued consistent with previous practice[,]

in conjunction with subsection 1 of section B, providing

> [t]he basic academic year teaching load for full-time
> faculty shall be twenty-four (24) teaching credit hours.
> All overload for full-time faculty shall be voluntary
> and overload rates shall be paid for all voluntary
> teaching assignments beyond twenty-four (24)
> teaching credit hours. No full-time faculty member
> may be assigned more than fifteen (15) teaching credit
> hours per semester within load. The teaching load for
> part-time faculty shall be a minimum of one half the
> teaching load for full-time faculty[,]

A-3469-19

the arbitrator concluded "Article XII has specific references to both teaching load" and "the assignment of non-teaching duties," but "the language does not include a clear and unambiguous formula setting all aspects of the apportioning or balancing of 'teaching load' assignments and the performance of 'non-teaching duties.'" Although finding the grievance did "not directly implicate" Section C[1] because "the nature of the non-teaching duties themselves is not in dispute," thereby implicitly finding the non-teaching

---

[1] Article XII C. "Other Responsibilities" provides:

> 1. Non-teaching duties include scholarly, research and artistic activities; service through sharing their professional expertise both within and beyond the College/University; and the mentoring and advisement of the students in their courses and programs. During the period of instruction faculty shall be present on campus as necessary to their professional responsibilities and shall also be accessible to students, faculty and staff colleagues through whatever normal, electronic, telephonic or written modes they find most convenient during the academic year. Nothing contained herein shall in any way affect the terms and/or continued application of any locally negotiated agreements and/or previous practices pertaining to non-teaching responsibilities, nor shall anything contained herein affect the rights of the College/University, UNION or Local Union under the New Jersey Employer-Employee Relations Act.

duties were within the job description of a full-time tenured professor, he nevertheless took it upon himself to "interpret" the language of Sections B.1 and B.7 of Article XII to devise a "formula" for apportioning between teaching and non-teaching duties.

Specifically, the arbitrator concluded

> the non-teaching duties that the University has the right to assign "within load" must be assigned in conjunction with a faculty member's performance of teaching credit hours and that the non-teaching duties must fall within the presence of a faculty member carrying a teaching load, so long as the availability of a credit course exists for assignment to the affected faculty member who is qualified to teach the course and is, in fact, taught as was done here by adjunct faculty instead of the full-time professor.

The arbitrator thus determined that although the University had both express and reserved rights under Article XII to assign non-teaching duties to the grievants, he found the University's authority did not extend "to converting a full-time faculty member's primary responsibility to teach credit courses 'within load' to the predominant or exclusive performance of non-teaching duties involving administrative or programmatic work even if such work is intended to support departmental goals and objectives." The arbitrator rejected the undisputed evidence that the University had several times before assigned tenured faculty members exclusively non-teaching duties, as all involved

7

"negative behavioral or negative performance issues" not present in this case.

He concluded that

> [e]ven assuming that the University's decisions here were based on "operational considerations," its use of this broad and general term cannot serve as a fig leaf to allow for the conversion of a faculty member's primary duty to teach available courses within his or her expertise to one that instead predominantly or exclusively involves performing non-teaching duties.

Turning to remedy, the arbitrator found no basis for a substantive remedy on compensation as both grievants were paid as full-time faculty, and the union had likewise failed to prove "any lost professional opportunities or recognition/rewards due to the reassignments." Instead, the arbitrator directed the University to cease and desist "from converting a faculty member's primary duty to teach an available course within his or her expertise to an assignment that predominantly or exclusively involves the performance of non-teaching duties."

The trial court rejected the University's arguments that the arbitrator imposed new terms and conditions on the parties that were not a part of the agreement, making his interpretation inconsistent with its plain meaning and not reasonably debatable, modified the agreement in contravention of the undisputed evidence of the parties' past practice, and exceeded his authority by

8

going beyond PERC's scope of negotiations ruling. The University reprises those arguments on appeal.

Notwithstanding our limited review of arbitration awards, Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017), we have no hesitation in finding the trial court erred in affirming this award. Beyond failing to directly address the issues PERC charged him with resolving, the arbitrator plainly added terms to the agreement the parties never negotiated; his interpretation of the agreement is simply not reasonably debatable, see Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201-02 (2013), and should have led to the trial court's refusal to enforce the award. See Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 212 (2021).

The parties' collective negotiations agreement is clear. Section B.1 of Article XII limits only the maximum number of teaching credit hours, "or its equivalent," Article XII B.4., a faculty member may be assigned by the University per year and per semester. The agreement plainly acknowledges a faculty member's responsibilities include "teaching responsibilities," Article XII B., and "other responsibilities," Article XII C. Article XII C.1. defines such non-teaching duties to include "scholarly, research and artistic activities;

service through sharing their professional expertise both within and beyond the College/University; and the mentoring and advisement of the students in their courses and programs."

Contrary to the arbitrator's construction of the agreement, there is no provision requiring faculty members be assigned to teach at least some part of their maximum "load" each semester if appropriate classes are available. To the contrary, pursuant to Section B.7. of Article XII, "[a]ssignment of non-teaching duties within load for any faculty member, for any purpose, is a matter of academic/managerial judgment of the College/University." The University's prerogative to assign a faculty member non-teaching duties within that faculty member's maximum "load" is stated with no limit other than the non-teaching duties must be "responsibilities which have been traditionally performed by faculty and are reasonable and consistent with sound academic practice," Article XII C.2.

The arbitrator thus had no call to determine how the University should "apportion[] or balance[e] . . . 'teaching load' assignments and the performance of 'non-teaching duties,'" and certainly none to impose a test for how the University should assign non-teaching duties when the parties had never negotiated one. The arbitrator disregarded the clear language of the agreement

10

and effectively bound the parties to new terms and conditions, significantly modifying the contract in the process.  See Borough of Carteret, 247 N.J. at 212.

Although the arbitrator failed to address directly the issues PERC assigned him, his opinion makes clear he made findings on two of three of the issues.  As to whether "the non-teaching duties" the University assigned the grievants "fall outside the grievants' primary duties," the arbitrator noted "the nature of the non-teaching duties themselves is not in dispute."  Both grievants testified they had previously performed all the non-teaching duties currently assigned them.  Accordingly, there is no question but that the non-teaching duties the University assigned the grievants were not outside the job description of a full-time, tenured professor.

The arbitrator also made clear in his discussion of remedy that the Union had failed to establish the grievants had suffered "any lost professional opportunities or recognition/rewards due to the reassignments."  Because both sides agree the grievants were still being paid as full-time, tenured professors, it's clear the arbitrator found no "impact of performing non-teaching duties" on the grievants in terms of "compensation, workload, [and] working hours."

That leaves the question of whether the University established "that an educational policy rationale was in fact the basis for assigning non-teaching duties to only the grievants." While there was considerable testimony presented as to the criteria the University used to select the grievants for reassignment, the arbitrator did not address whether the University established an educational policy rationale for choosing them specifically. The arbitrator stated he did "not reach any conclusions [as] to the parties' negotiations obligation relating to the procedures of the reassignment of a faculty member to the performance of non-teaching duties," leaving the parties to their rights "to refer any such disagreements to their grievance procedure and/or PERC's unfair labor practice jurisdiction."

Because we find the University was within its rights under the parties' clearly worded agreement to reassign full-time tenured faculty members such as grievants to non-teaching duties within their job descriptions, as here, and the arbitrator found they suffered no diminution in their compensation or any loss of professional opportunities, recognition or rewards on account of the reassignments, we reverse the trial court order confirming the award, as not reasonably debatable, and vacate the award in its entirety. We leave the parties to their rights under the agreement as to the frequency, rotation and

12

allocation of non-teaching duties among employees, including the grievants in the event the union can establish the absence of an educational policy rationale for the reassignment.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3469-19