**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4535-19

NEWARK FIRE OFFICERS
UNION, LOCAL 1860, IAFF,
AFL-CIO,

     Plaintiff-Respondent,

v.

CITY OF NEWARK,
A MUNICIPAL CORPORATION
OF THE STATE OF NEW JERSEY,

     Defendant-Appellant.

_____

Submitted September 20, 2021 – Decided October 6, 2022

Before Judges Messano and Accurso.

On appeal from the Superior Court of New Jersey,
Chancery Division, Essex County, Docket No.
C-000081-20.

Carmagnola & Ritardi, LLC, attorneys for appellant
(Sean P. Joyce and Jessica A. Merejo, on the briefs).

Zazzali, Fagella, Nowak, Kleinbaum & Friedman,
attorneys for respondent (Paul L. Kleinbaum, of

counsel and on the brief; Sheila Murugan, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The City of Newark appeals from a July 9, 2020 Chancery Division decision confirming a public interest arbitration remedy award in favor of plaintiff, Newark Fire Officers Union, Local 1860, IAFF, AFL-CIO. We reverse. The trial court failed to consider whether the remedy, which directed the City "to eliminate the Formulary drug list" in its self-insured retiree prescription drug program, was even possible much less reasonably debatable. Accordingly, for the reasons that follow, we remand to the trial court for entry of an order remanding the matter to the arbitrator to render an appropriate remedy.

This matter has an unusual procedural history, which undoubtedly contributed to the problem we see with the remedy award. The City and the Union are parties to a collective negotiations agreement that provides for a pre-paid prescription plan for retired employees. Although the co-pay rates differ depending on the employee's date of retirement, all eligible employees retiring after January 1, 1998, have paid higher rates for brand name drugs than they have for generics. For those eligible retirees with twenty-five years

of service retiring on or after January 1, 2007, for example, the co-pay per prescription is $5.00 for generic drugs and $10.00 for non-generic drugs. Section 12.10 of the CNA expressly reserves to the City "the right to change insurance carriers during the term of this Agreement so long as substantially similar benefits but no less than those presently in effect are provided by the new carrier."

For many years, both active members of the Union and retirees were covered by a Horizon plan. The City apparently switched from the Horizon Traditional Plan to the Horizon Direct Access Plan in 2016, and later terminated that plan and enrolled in the State Health Benefits Plan. The State Health Benefits Commission subsequently allowed Newark to withdraw its retirees from the Plan in 2017 on the condition the City enroll them in an Employer Group Waiver Plan, essentially a Medicare Part D plan for retiree prescription drug benefit coverage. On January 1, 2018, the City transitioned those retirees to its Group Waiver Plan, a self-funded prescription drug plan administered by Navitus Health Solutions.

Within three weeks of the move to Navitus, the Union filed a grievance complaining Navitus had "issued a booklet to retirees outlining restrictions and a formulary list," and seeking the immediate restoration of "the negotiated

3

level of prescription benefits to all retirees." On the first day of the arbitration in July 2018, the City learned the Union considered "the negotiated level of prescription benefits" to be the Horizon plan the City terminated in 2016, not the State Health Benefits Plan in place for nearly eighteen months, which the Navitus plan replaced. The City moved to dismiss the grievance, arguing it was prepared to compare the prescription plan provided by the State Health Benefits Program to its successor, the Navitus plan, not plans the City had by then terminated two years before. The City claimed a grievance objecting to the move away from Horizon in 2016 was untimely, and the Union should not be permitted to pick and choose among prior plans to which to compare the current Navitus plan.

After initially denying the motion without prejudice to the City presenting its arguments at the hearing, the arbitrator ultimately determined the City waived a timeliness defense by having failed to respond to the Union's grievance before the matter proceeded to arbitration. At the hearing, the Union presented the testimony of its president and an expert, Dominick Fanuele, who specializes in reviewing benefit plans for public unions.

The president conceded the co-pays and out-of-pocket expenses incurred by retirees under the Navitus plan were the same as those under the Horizon

4

plans,[1] and thus no retiree had suffered any monetary damage in the shift to Navitus. He testified, however, that immediately after the shift, retirees began calling him to complain about Navitus denying them their prescribed medicines. He presented evidence of seven retirees or their dependents who had been denied medications, almost all of which they had been receiving under the Horizon plan. Although conceding the retirees eventually received the medications following an appeal process, the witness testified the process was "burdensome" and that the prior authorizations, "step therapy, quantity limits" and formulary lists in the Navitus plan were never a part of the Horizon plan. The witness testified he was not aware "that drugs that are on formularies change between generic and branded," and that he "didn't even know what a formulary was before this all started to happen."

Fanuele, who compared the 2016 booklet provided to retiree members of the Horizon benefit plan with the pharmacy benefit management agreement and employer group contract between the City and Navitus and an addendum to that contract, the employer group waiver plan agreement, opined "that the Navitus plan made access to certain medications more restrictive than the

---

[1] The arbitrator refers to the two Horizon plans interchangeably, making no distinction between them.

original Horizon contract." He testified that although Horizon described the difference between a brand name prescription drug and a generic formulation in its member booklet and referenced a formulary, it "did not refer to a specific formulary or provide a listing therein." He opined the Navitus plan was thus not "substantially similar" or "at least equal to" the Horizon plan.

The City's expert, Eric B. Labaska, a New Jersey public sector consultant who assisted the City in transitioning its retiree prescription drug program from the State Health Benefits Plan to Navitus, testified the Navitus plan was "substantially similar" or "at least equal to" the Horizon prescription drug program the City previously provided its retirees. He explained the member co-pays and out-of-pocket costs of the Navitus plan were matched identically to the Horizon plan and both contained "utilization review type programs." Specifically, he presented information from the City's Blue Cross account executive in September 2018, stating the City of Newark used Horizon's "classic formulary," which could be accessed on Horizon's website, noting "the drug list will change periodically as drugs come on and off the market and switch tiers."

Labaska testified that drug formularies are typically not established by the plans but by their pharmacy benefit managers (PBMs), third-party vendors

6

that assemble the network of pharmacies and negotiate with the drug manufacturers for prescription drug compounds. He also explained that both Horizon and the State Health Benefits Program used PBMs,[2] and that all prescription drug plans have utilization review programs built into their formularies, that is, "cost-savings measures ensuring that members are taking the medications that are required based upon the FDA guidelines of condition or illness," thereby determining medical necessity. He also explained that while the precise terms of the various programs differ, they are generally organized under the categories of current drug review, retrospective drug review, treatment alternatives and quantity limitations to ensure not only that the member is taking the proper drug, but that he or she is not taking more of a drug than is necessary.

Labaska also noted that a self-funded plan contract has "a lot more moving parts" than would be described in a summary plan description member booklet in a fully insured plan such as Horizon, because it is the City, or other self-funded source, that is receiving the rebates and discounts that would go to the PBM in a fully insured plan, requiring a more detailed contract. He

_____

[2] See Matter of Request for Proposals #17DPPP00144, 454 N.J. Super. 527, 535 (App. Div. 2018) (explaining the State's use of a PBM in its self-funded prescription drug plans).

explained that a number of the programs built into a formulary, such as quantity limits and incompatible drug restriction safety edits, are invisible to the member. And some that are visible, such as for a prior authorization, medical necessity drug, for instance, often require authorization only once, meaning a member maintained on the drug for years might not recall their doctor having gone through the process. Finally, Labaska expressed his understanding that Horizon's formulary changed quarterly even without a change in the PBM, as drugs changed tiers as brand name drugs came off patent and other drugs were removed from the formulary. Because the formulary changed so regularly, he noted that even had the City remained in the Horizon plan, members would not have available the same formulary today.

In response to Labaska's assertions, Fanuele continued to maintain that the Navitus plan was not substantially similar to the City's former Horizon plan "because of the additional restrictions as to what medications could be obtained." Although conceding that formularies are created by PBMs and not providers such as Horizon, that "large entity public sector" plans have formularies, that quantity limits, although not spelled out in the 2016 Horizon member booklet, are "pretty standard" to ensure individuals do not take more

A-4535-19

of a drug than necessary or don't take it longer than necessary "if it's something that could lead to different side effects over an extended period," that the 2016 Horizon summary plan description referenced a formulary, and even identifying the formulary he believed would have applied to an employer such as the City, Fanuele refused to concede the formulary identified by the City's Blue Cross representative as applying in 2018 was in place in 2016, because he "saw, again, no reference to a specific formulary" in the booklet provided to the City's retirees in 2016. The Union further maintained the City had the ability to have negotiated a less restrictive formulary with Navitus.

At the conclusion of the hearing the arbitrator issued an opinion and award rejecting, as already noted, the City's claim the grievance was untimely. The arbitrator found the City waived its timeliness defense by not raising it "during the grievance procedure, and permitting the Union to file for arbitration without ascertaining the basis for the Union's grievance." The arbitrator thus defined the substantive issue to be whether the prescription benefits for retirees under the Navitus plan were substantially similar to the benefits provided to retirees by Horizon.

Noting the Union's concession that the co-pays and out-of-pocket expenses were the same under both plans, the arbitrator found the "proceeding

9

concerns the different administrative requirements between the longstanding Horizon Traditional Plan and the Navitus Plan implemented on January 1, 2018." The arbitrator noted the City's unsuccessful efforts to obtain the 2016 plan documents from Horizon resulted in there being "no documentary support for the City's contention that the Navitus plan's restrictions governing formulary drugs, step therapy and quantity limits are similar to the Horizon Traditional Plan's purported restrictions." And while acknowledging the burden was on the Union to prove the benefits under the Navitus plan were not substantially similar to those provided under the Horizon plan, because those documents were not produced, the arbitrator drew "an adverse inference against the City and conclude[d] that the Horizon Plan and the Navitus Plan were not substantially similar."

The arbitrator concluded the Union established "the additional administrative requirements imposed on the retirees" by the change to Navitus "had a direct impact on the ability of the retirees to easily secure their prescriptions," and thus that "the changes imposed by Navitus have altered the benefits of the retirees in a material way." The arbitrator entered an award directing the City "to restore the previous level benefits provided under the Horizon Plan in the period before January 1, 2018."

A-4535-19

The City did not object to the Union's motion to confirm that award and instead took steps to comply by eliminating from the Navitus plan any requirements for pre-authorization for specific drugs and step therapy, i.e., requiring a member to first try a certain drug to treat their condition before covering the prescribed alternative. The Union complained the City had not complied with the award. When the parties were unable to resolve their dispute over the City's compliance, the Union asked the arbitrator to convene a hearing to resolve it.

After hearing argument on the City's compliance, the arbitrator issued an opinion and award "concerning remedies." The arbitrator recapped the Union's request that he "direct the City to eliminate the formulary drug list, step therapy, prior authorization and quantity limitations in the Navitus plan," and the City's contention it had removed "the administrative hurdles" to retirees receiving their prescriptions and provided the Union with the Horizon 2016 formulary Fanuele claimed he'd never seen. The arbitrator found the City had removed the requirements for prior authorization and step therapy from the Navitus plan.

The arbitrator, however, deemed "the formulary issue was conclusively decided in the Merits Award." Acknowledging the City had introduced in the

11

remedy proceeding "documents which purportedly show that the Horizon Plan, in fact, had a formulary when Horizon was under contract with the City in 2016," the arbitrator found "the City has not shown how the formulary program was administered by Horizon or if retirees were in fact ever denied coverage because of the application of the Horizon Plan's formulary." (Emphasis is ours). Determining he did not "have the power to revisit issues raised by the City concerning the merits of this case," the arbitrator barred the City "from introducing evidence that it had a viable and operational formulary drug list in 2016 when the retirees were covered by the Horizon Plan," and concluded "the Navitus Formulary should not be applied to the retirees because the City has not proven that the benefits under the Navitus Plan were substantially similar to the benefits provided under the Horizon Plan." (Emphasis is ours). The arbitrator entered an award directing the City "to eliminate the Formulary drug list and quantity limitations contained in the Navitus Plan."

The Chancery judge granted the Union's motion to confirm the remedy award and denied the City's cross-motion to vacate it, finding the arbitrator's award from January 2019 "very clear" and the remedy "reasonably debatable." This appeal followed.

A-4535-19

Our Supreme Court explained what a drug formulary is in 2007 in

International Union of Operating Engineers Local No. 68 Welfare Fund v.

Merck & Co.:

> Whenever a plan member receives a prescription and takes it to be filled, the plan member must first demonstrate that he or she is covered by a third-party payor plan. In general, the plan member submits membership information, such as a prescription insurance card, to the dispensing pharmacy for verification and approval by the third-party payor. Once the plan member has done so, the dispensing pharmacy verifies that the prescribed medication is one that the third-party payor has authorized for purchase. The drugs that each third-party payor has authorized are included within that third-party payor's approved purchase listing, known as a formulary.
>
> Third-party payors do not independently select medications for inclusion in their formularies. Instead, each third-party payor relies on Prescription Benefit Managers (PBMs) whose functions include placing prescription drugs on the individual third-party payors' formularies. PBMs, in turn, utilize specialized committees of pharmacists, physicians, and healthcare professionals, which are known as Pharmacy and Therapeutics Committees (P & T Committees), to develop and maintain the formularies. The P & T Committees do so by conducting their own evaluation of the effectiveness, safety, and cost of each available medication.
>
> [192 N.J. 372, 378-79 (2007).]

The Court explained that even "open" formularies that include essentially all prescription medications approved by the FDA "involve decisions by P & T Committees that determine how any specific medication will be treated for purposes of placement. Those decisions may result in conditions relating to how a third-party payor will cover the cost of a medication." Id. at 380. The Court concluded that "[a]s a practical matter, each PBM, through the work performed by the P & T Committee and its creation of the formulary, sets the terms under which the third-party payor agreed to be responsible for the costs of its members' prescriptions." Ibid.

As we understand it, a formulary is, in essence, the blueprint for how a prescription drug benefit plan operates. Ordering the City "to eliminate the Formulary drug list and quantity limitations contained in the Navitus Plan" because "the City has not proven that the benefits under the Navitus Plan were substantially similar to the benefits provided under the Horizon Plan" not only miscast the party with the burden of proof, but gutted the retirees' prescription benefit plan with no direction, and apparently no care, as to how the remedy could be implemented.

Although the arbitrator's 2019 opinion and award is not before us, the problem we perceive with the remedy award obviously has its genesis there.

14

We do not address the wisdom of drawing an adverse inference against a party without a burden of proof for failing to produce a formulary drug list of a plan the City had twice replaced following its termination two years before, in a case where there is no dispute that such lists change frequently as generics become available and drugs move on and off the list. We cannot, however, overlook that the arbitrator defined the proceeding as one concerning "the different administrative requirements between the longstanding Horizon Traditional Plan and the Navitus Plan," concluded the change to Navitus resulted in "additional administrative requirements imposed on the retirees" having "a direct impact on the ability of the retirees to easily secure their prescriptions" but only ordered the City "to restore the previous level benefits provided under the Horizon Plan" without further direction.

Now faced with a situation in which the City has attempted to implement the award by removing requirements for prior authorization and step therapy from its Navitus plan — and proof the Horizon plan in 2016 utilized the "classic formulary" as the City's Blue Cross executive advised in 2018 in a document in the record of the first arbitration, which the arbitrator tacitly acknowledged by noting the City had still "not shown how the formulary program was administered by Horizon or if retirees were in fact ever denied

A-4535-19

coverage because of the application of the Horizon Plan's formulary" — the arbitrator has ordered the City to eliminate any formulary drug list from the Navitus plan, along with any quantity limitations, without any analysis as to what either will mean for the retirees' prescription drug plan.

Although courts ordinarily accord public sector arbitration awards "a wide berth," mindful that it's the arbitrator's interpretation of the contract the parties have bargained for, Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013), we think it clear this remedy award cannot stand. We have no quarrel with the arbitrator determining that the Navitus plan did not provide "substantially similar benefits" to Horizon's Traditional Plan; it is the arbitrator's ordered remedy to "eliminate the formulary drug list and quantity limitations" from the Navitus plan where we find the arbitrator exceeded or imperfectly executed his powers. See N.J.S.A. 2A:24-8(d).

Because the subject of the arbitration was the different administrative requirements of the prescription drug plans offered by Horizon and Navitus, the arbitrator, in our view, had less room to fashion his own remedy than he might in other contexts. See Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 397 (1985) (recognizing "an arbitrator's power to decide what is fair and just is at all times limited by the intent of the parties as

16

manifested by the terms of their contract").  The problem as we see it is the arbitrator's failure to define what a formulary is and what it does.  If Horizon utilized an "open" formulary as stated in Horizon's January 2016 "Classic Drug Guide," supplied by the City in the remedy proceeding, then a directive to eliminate any formulary in the Navitus plan clearly exceeded the arbitrator's powers.  Similarly, we find no sound basis for the arbitrator to have ordered the elimination of quantity limits in the Navitus plan, also clearly employed in the 2016 Horizon "Classic Drug Guide," in light of the previous testimony of both experts that such limits are a standard safety measure and, as the Union's expert testified, are employed to ensure individuals don't take more doses of a drug than necessary or don't take it longer than necessary "if it's something that could lead to different side effects over an extended period."

We cannot fail to recognize that the terms of this remedy will in large measure dictate the medicines provided to the Union's retirees.  Without a formulary list, the PBM presumably will not be permitted to use a P & T Committee to conduct "their own evaluation of the effectiveness, safety, and cost of each available medication," see Int'l Union of Operating Eng'rs Loc. No. 68, 192 N.J. at 379, to limit coverage of experimental or investigational drugs or "off-label" use, or any drug contraindicated for the treatment for

17

which it is prescribed, nor without quantity limits identify gender or age restrictions associated with a drug or the maximum amount of medicine safely dispensed per prescription. As we do not believe that this is what the parties bargained for in submitting their dispute to arbitration, we reverse the order confirming the arbitration award and remand for entry of an order remanding the matter to the arbitrator to enter an appropriate remedy after consideration of the Horizon plan documents in place in 2016, including the Horizon 2016 plan description book and Horizon's 2016 "Classic Drug Guide." We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18