**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1340-22

POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL NO. 260,

    Plaintiff-Respondent,

v.

TOWNSHIP OF PEMBERTON and
TOWNSHIP OF PEMBERTON
POLICE DEPARTMENT,

    Defendants-Appellants.

_____

Submitted January 22, 2024 – Decided February 7, 2024

Before Judges Marczyk, Chase, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket Nos. L-0102-22 and L-0108-22.

Capehart & Scatchard, PA, attorneys for appellants (Carmen J. Sanginario, of counsel and on the brief).

Sciarra & Catrambone, LLC, attorneys for respondent (Christopher A. Gray, of counsel and on the brief; Frank Carmen Cioffi, on the brief).

PER CURIAM

Defendant the Township of Pemberton ("the Township") appeals from the Law Division's December 5, 2022 order denying their order to show cause seeking to set aside an arbitration award and a corresponding confirmation of such award in favor of the plaintiff Policemen's Benevolent Association Local 260 ("PBA"). The arbitration resolved a grievance the PBA filed over the Township's obligation to pay the health care expenses of certain retirees under the 2018-2021 collective negotiation agreement ("the CNA"). We affirm.

The PBA is a labor organization representing police officers employed by and retired from the Township. The parties entered into multiple labor agreements over the years. Under an agreement spanning from 2007-2009, the Township provided "major medical, hospitalization, and prescription drug insurance benefits," and provided retired employees "with continued health benefits . . . [to] cover the employee only at the single person rate."

The parties' 2010-2013[1] agreement modified this language to acknowledge the June 2011 passage of P.L. 2001, c. 78 ("Chapter 78"), which amended the law on public employee health insurance contributions. The law

_____

[1] While the 2010-2013 agreement covered dates prior to the law's passage, it was executed after the law went into effect.

required public employees to contribute defined percentages of their health care benefit premiums based on annual income. N.J.S.A. 52:14-17.28(c).

The Chapter 78 reforms created N.J.S.A. 40A:10-21.1, which phased in the public employees' contributions in four tiers over four years. The statute required employees to pay "one-fourth of the . . . contribution" during the first year (tier one), "one-half" in the second year (tier two), and "three-fourths" during the third year (tier three). N.J.S.A. 40A:10-21.1(a). Tier four, the full premium rate, was reached by the fourth year. Ibid. No matter the percentage dictated by the employee's salary or the proportion dictated by the tier, the law required the contribution by current employees "shall not under any circumstance be less than the 1.5 percent of [the employee's] base salary . . . ." Ibid. Retirees with twenty years or more of creditable service as of June 28, 2011, were exempted from payment. N.J.S.A. 40A:10-21.1(b)(3).

Chapter 78's "sunset" provision provided that N.J.S.A. 40A:10-21.1 would "expire four years after the effective date," on June 28, 2015. In turn, N.J.S.A. 40A:10-21.2, also created by Chapter 78, governs CNAs executed after full implementation of the tier four rates under 40A:10-21.1(a). It provides that "[a]fter full implementation, those contribution levels . . . shall then be subject to collective negotiations" and parties to a CNA "shall . . . negotiat[e] . . . for

health care benefits as if the full premium share was included in the prior contract."  N.J.S.A. 40A:10-21.2.

The labor agreement at issue in the present dispute spans from January 1, 2018, through December 31, 2021.  The CNA is a successor[2] to the 2010-2013 agreement.  In language largely mirroring the 2010-2013 agreement, Article X, Section A, Paragraph Four of the CNA provides the following for active employee health benefits:

> Eligibility for medical benefits is dependent upon an employee's permanent full-time status with the Township (regularly scheduled to work an average of 35 or more hours per week).  Employees electing benefits under this plan shall be required to pay contributions based on a percentage of the cost of coverage as set forth in [Chapter 78], subject to any right which may exist in the future to negotiate contributions . . . .

Article X, Section A, Paragraph Five of the CNA, addressing retiree benefits, provides, "[t]he Township will assume the cost of health benefits coverage and pay all premiums for [eligible retirees], . . . at the 'single' level of coverage." (emphasis added).  It goes on to state, "retirees will receive the same health benefits and under the same terms and conditions as current active

---

[2]  Nothing in the record indicates the existence or terms of an agreement covering the dates between the December 2013 expiration of the prior agreement and the January 2018 effective date of the subject CNA.

A-1340-22

employees." (emphasis added). The Township construed this "same terms and conditions" language to require retirees to contribute along Chapter 78 rates because active employees were required to do the same, and the Township charged retirees for benefits contributions accordingly.

In August 2020, the PBA filed a grievance against the Township, challenging its practice of requiring retirees to contribute to their healthcare coverage as a violation of the terms of the CNA. The PBA then submitted a request to the New Jersey Public Employment Relations Commission for arbitration. The parties agreed the arbitrator would decide the narrow issue of whether the Township violated Paragraph Five of the CNA when it charged eligible retirees for healthcare contributions. Both parties presented witness testimony and documentary evidence.

On October 27, 2021, the arbitrator issued a written opinion and award in the PBA's favor, finding the unambiguous language of the CNA to require the Township to assume the entire cost of eligible retirees' health benefits premiums. She ordered the Township to cease collecting contributions from those retirees "unless and until provisions in a successor collective bargaining agreement dictate otherwise." She also ordered the Township to reimburse those retirees erroneously charged.

5

In January 2022, the PBA filed a verified complaint to confirm the award, and the Township filed a verified complaint to vacate, modify, or otherwise correct the award. The cases were consolidated below. The court agreed with the PBA's position that the arbitrator's conclusion was "reasonably debatable," and issued an order confirming the arbitration award.

The Township contends the trial court erred by confirming the arbitrator's decision as "reasonably debatable" because of the CNA's clear and unambiguous language and extrinsic evidence of the parties' intent. It also argues that the award is contrary to existing law and public policy. We disagree with both propositions.

Generally, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)). "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." Borough of E. Rutherford v. E.

Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

A trial court's decision to confirm an arbitration award is a conclusion of law which we review de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). Similarly, we "review the trial court's decision on a motion to vacate an arbitration award de novo." Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz, 433 N.J. Super. at 136). We are bound to accept the trial court's factual findings unless "clearly erroneous." Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 507 (App. Div. 2004) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)).

Therefore, "an arbitrator's award resolving a public sector dispute will be accepted so long as the award is 'reasonably debatable.'" Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Local 67, 247 N.J. 202, 211 (2021) (quoting Borough of E. Rutherford, 213 N.J. at 201-02)). "Under the reasonably debatable standard, a court reviewing [a public-sector] arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Id. at 201-02 (alteration in

original) (quoting Middletown Twp. PBA Local 124, 193 N.J. at 11). "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

However, vacatur may be proper "when it has been shown that a statutory basis justifies that action." Ciripompa, 228 N.J. at 11 (quoting Kearny PBA Loc. #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). The statutory bases for vacatur include, "[w]here the award was procured by corruption, fraud[,] or undue means . . . [or] [w]here the arbitrators were guilty of misconduct . . . in refusing to hear evidence, pertinent and material to the controversy . . . ." Ciripompa, 228 N.J. at 12 (quoting N.J.SA. 2A:24-8).

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford, 213 N.J. at 203 (quoting N.J. Off. of Emp. Rels. v. Commc'ns Workers of Am., 154 N.J. 98, 111 (1998)). See also Middletown Twp. PBA Local 124, 193 N.J. at 11 (holding awards contrary to existing law or public policy may be vacated as procured by undue means).

To the extent review of an arbitral award for agreement with law or public policy involves statutory interpretation, such a review is de novo and the court's "paramount goal" is to discern the Legislature's intent. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 18 (2020) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

The Township argues the arbitrator improperly ignored the unambiguous language of the contract holding retirees subject to the same terms and conditions of coverage that applied to active employees. The Township also argues the arbitrator ignored the evolution of the language in the parties' agreements over time, which indicated an intent to be bound by Chapter 78 and its mandatory contribution levels.

The PBA responds that the arbitrator's interpretation of the contract met the "reasonably debatable" standard, and the trial court was correct to confirm it. We agree.

Because the arbitrator found the contract language to unambiguously require the Township to pay retirees' benefits, she was not required to consider extrinsic evidence of the parties' past practices. The interpretation was justifiable, supported by the record, and meets the "reasonably debatable" standard. We see no reason to substitute our interpretation for that of the

A-1340-22

arbitrator. When a CNA provides for the resolution of disputes through binding arbitration, "the arbitrator's construction . . .is bargained for, and not a court's . . . ." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 429 (2011) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)).

Next, the Township argues the award violates public policy as clearly expressed in law. Because Chapter 78 was enacted to provide tax relief for the State's citizens, the Township reasons the arbitral award entirely relieving retirees of contribution obligations is contrary to its clearly stated public policy. But the relevant CNA provision, and the effect upon retirees, is neither unlawful nor contrary to a clear mandate of public policy. Rather it is a negotiable item.

Chapter 78 established a staggered timeline to phase in employee health care contributions. By its very terms, once the fourth tier or "full premium" contribution level was reached, the future contribution levels became a negotiable component of subsequent CNAs. N.J.S.A. 40A:10-21.2. Here, tier four was reached in 2015. This 2018-2021 CNA was executed well after full implementation, when the parties were free to negotiate downwards from the earlier tier four contribution level. N.J.S.A. 40A:10-21.2. The statute specifies that although some sections would outlive the four-year expiration, those

surviving sections would only remain "alive" until the tier four contribution level was reached:

> A public employer and employees who are in negotiations for the next [CNA] to be executed after the employees in that unit have reached full implementation of the premium share set forth in [Chapter 78] shall conduct negotiations concerning contributions for health care benefits as if the full premium share was included in the prior contract. The public employers and public employees shall remain bound by the provisions of [Chapter 78], notwithstanding the expiration of those sections, until the full amount of the contribution required by [Chapter 78] has been implemented . . . .
>
> [N.J.S.A. 40A:10-21.2.]

Contribution levels were fully negotiable for any CNA executed after 2015 when full implementation of the tier four rates was complete. See In re Ridgefield Park Bd. of Educ., 244 N.J. at 25 ("the Legislature envisioned that the transition between Tier four health insurance premium contribution rates set by Chapter 78 and contribution rates negotiated by [public employers] and employees would take place in the negotiations for the next CNA . . ."). Nor does our reading of the statute establish enforcing the award would be contrary to public policy or counter to the legislative history and intent of Chapter 78 in aiding local governments in reducing the line item for employees' health benefit

premiums.  It created a category of employees for whom the parties could negotiate the contribution rate, and a timeframe in which such negotiations were permitted.

The statute expressly contemplated that these items would be negotiated through successor CNAs, as was the case here.  The arbitrator's award was reasonably debatable and not in conflict with public policy, and the trial court was correct to confirm it.

To the extent we have not expressly addressed any issues raised by defendants, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1340-22