**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0853-23

TOWNSHIP OF GREEN BROOK,

    Plaintiff-Respondent,

v.

PBA LOCAL 398,

    Defendant-Appellant.

_____

            Submitted February 5, 2025 – Decided February 21, 2025

            Before Judges Mayer and Puglisi.

            On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-012051-23.

            Mets Schiro & McGovern, LLP, attorneys for appellant (Leonard C. Schiro and Christa Lamia, of counsel and on the briefs).

            Ruderman & Roth, LLC, attorneys for respondent (Mark S. Ruderman and Littie E. Rau, of counsel and on the brief).

PER CURIAM

Defendant PBA Local 398 (PBA) appeals from a November 13, 2023 order vacating in part and affirming in part a June 14, 2023 arbitration award. The arbitrator required plaintiff Township of Green Brook (Township) to pay the retirement health care benefits for PBA member and retired Township Police Officer John Skikus. The arbitrator also determined there was no meeting of the minds between the Township and the PBA regarding the payment of health insurance premiums for retirees with less than twenty years of creditable service as of June 2011. Thus, the arbitrator remanded for further negotiations between the parties to address this issue. We affirm the November 13, 2023 order for the cogent reasons expressed by Judge Haekyoung Suh in her twenty-four-page written statement of reasons.

The Township hired Skikus on February 1, 1993. He retired from the Township's police department on February 1, 2018, having accrued twenty-five years of creditable service during his tenure as a police officer. However, as of June 28, 2011, Skikus lacked the required twenty years of service under N.J.S.A. 52:14-17.28d(b)(3) to receive free health care benefits.[1]

The Township and the PBA entered into a collective bargaining agreement (CBA) covering the period between January 1, 2010, to December 31, 2013.

---

[1] N.J.S.A. 52:14-17.28d is also referred to as Chapter 78.

Article IX, F of the CBA provided "[e]mployees who retire with twenty-five . . . years of public service shall have their and their eligible dependents['] health insurance benefits continued . . . with the premium of period charges paid by the Township."  The CBA also stated "[a]ny increase in the cost of such coverage during the lifetime of this [a]greement shall be borne by the Township."  The CBAs between the Township and the PBA since at least January 2006 and through December 31, 2023 contained similar provisions.

Prior to Skikus retiring, the Township's chief municipal financial officer sent a letter to Skikus stating the Township would continue paying his health care benefits costs.  For two years following his retirement, Skikus received fully paid retiree health benefits from the Township.

On June 28, 2011, before Skikus retired, the Legislature enacted N.J.S.A. 52:14-17.28d.  The statute required all public employees and retirees to pay a percentage of the cost of their health insurance benefits.  N.J.S.A. 52:14-17.28d(b)(1).  The health insurance contribution to be paid by public employees and retirees was phased in over a four-year period.  N.J.S.A. 52:14-17.28d(a).  Those retirees with twenty or more years of creditable service as of June 28, 2011 were exempt from contributing to their health care benefits insurance premiums.  N.J.S.A. 52:14-17.28d(b)(3).  At the end of the four-year

A-0853-23

phase-in, effective June 28, 2015, the parties to any collective negotiations agreement were required to "conduct negotiations concerning contributions for health care benefits as if the full premium share was included in the prior contract." N.J.S.A. 52:14-17.28d(b)(2)(e).

In a February 7, 2020 letter, the Township notified Skikus:

> [I]t has come to our attention that under Chapter 78 of P.L. 2011, you are required to contribute towards the cost of your health benefit premium. Under the law, employees that may be eligible for lifetime health benefits by obtaining [twenty-five] years of service, but did not have [twenty] years of service as [of] June 28, 2011 must contribute towards the cost of the premiums.
>
> Until recently, the Township was not aware that based on the rules of Chapter 78, the [S]tate only does direct deductions for health benefit contributions from pension checks for Chapter 48 towns, not Chapter 88, like Green Brook. Therefore, you are required to pay the Township directly and are not eligible for a direct deduction from your pension check from the State.

As of June 28, 2011, Skikus had only eighteen years of credible service. Upon receipt of the Township's February 2020 letter, Skikus paid approximately $23,000 to the Township, representing his uncollected health care benefits contribution from February 2018 to April 2020. In April 2020, Skikus started paying his health care benefits insurance contribution directly to the Township.

4

On April 6, 2022, the PBA filed a grievance with the Township contesting Skikus's required contribution for health care benefits. The Township denied the grievance. On May 5, 2022, the PBA requested arbitration with the Public Employment Relations Commission (PERC).

PERC assigned the matter to an arbitrator. The parties agreed the arbitrator would decide whether the Township violated Article IX, F of the CBA by requiring Skikus to contribute to the cost of his retiree health care benefits. If the arbitrator found the Township violated the CBA, the parties further agreed the arbitrator would determine the appropriate remedy.

After hearing testimony and reviewing the parties' submissions, the arbitrator rendered a June 14, 2023 award. In his sixteen-page award, the arbitrator found:

> 1. The Township violated the Negotiated Agreement when it failed to continue to pay retiree health insurance premiums for [John] Skikus. The Township shall make [John] Skikus whole, retroactively and prospectively, for its failure to do so.
>
> 2. The issue of retiree health insurance premiums is remanded to the parties for collective negotiations.

Additionally, the arbitrator held the doctrine of equitable estoppel precluded the Township's collection of health care benefits contributions from Skikus. The arbitrator found "[i]t [wa]s clear . . . that Skikus'[s] decision to

retire when he did was based, in part at least, upon the lack of health premiums he would have to pay" and his "circumstances f[e]ll squarely within the doctrine of detrimental reliance."

Regarding health care benefits contributions to be paid by PBA members who retired after 2011 without twenty years of creditable service, the arbitrator found "the parties did negotiate the issue as required by law but did not come to an agreement." Based on contradictory arguments advanced by the PBA and the Township on this issue, the arbitrator remanded for further negotiations between the parties.

About a month after the arbitrator rendered his award, the Township filed a verified petition and order to show cause (OTSC) in the Superior Court to modify and vacate portions of the arbitration award. In its petition, the Township asserted Skikus was not exempt under Chapter 78 because he lacked the required twenty years of creditable service as of June 28, 2011.

The PBA filed an answer and counterclaim. The PBA sought to confirm the arbitrator's award in favor of Skikus. It also sought to vacate and modify the portion of the arbitration award requiring negotiations as to other PBA retirees' health care benefits contributions. According to the PBA, the CBA clearly stated retirees were not required to contribute to health care benefits.

A-0853-23

Judge Suh heard argument on the Township's OTSC. In a November 13, 2023 order, the judge vacated the arbitrator's award in part and confirmed the arbitrator's award in part. Judge Suh found "the contractual provision that purportedly granted employees like [] Skikus free health care at the Township's expense clashed with a new statutory scheme promulgated in 2011." Accordingly, Judge Suh explained she had to determine whether the doctrine of equitable estoppel prevented the Township from rescinding Skikus's free retirement health care benefits.

Regarding Skikus's eligibility for free health benefits under Chapter 78, Judge Suh concluded "[e]ven if [] Skikus worked another two, or even ten years, he still would not be able to achieve the statutory twenty years of service by June 28, 2011." Therefore, the judge found the arbitrator's decision as to Skikus was not reasonably debatable because Article IX, F of the CBA was ultra vires and thus void. As she explained, "[t]here is no fair debate that [] Skikus was not entitled to free health care benefits because he did not have twenty years of creditable service as of June 28, 2011."

Moreover, because the "Legislature drew a hard line in Chapter 78 regarding exempt employees," Judge Suh explained, "[t]he arbitrator did not have any legal authority to apply equitable estoppel principles to permit the

Township to continue to provide free health care benefits based on eligibility to an individual who did not have twenty years of services as of June 28, 2011." In vacating the arbitrator's award as to Skikus, Judge Suh wrote: "It is the Legislature's clear intent that the only fixed class exempted from the requirement to pay premiums was those individuals who had twenty years of creditable service by June 28, 2011. By applying principles of equitable estoppel, the arbitrator upended the Legislature's scheme and flouted its directives."

In upholding the arbitrator's remanding the issue of health care benefits contributions to be paid by other PBA retirees, Judge Suh explained N.J.S.A. 52:14-17.28d "require[d] some contribution, but the CBA [did] not indicate what amount retirees are to pay for their health insurance premiums." Additionally, she stated there was "no credible proof that the provisions within Article IX, F were specifically negotiated and assented to by the parties after June 28, 2011." In deferring to the arbitrator's finding that there was no "meeting of the minds" during negotiations between the parties, Judge Suh held: "The arbitrator's decision to remand the issue to the parties for negotiation was reasonably debatable and is confirmed."

A-0853-23

The PBA appealed. On appeal, the PBA challenges the judge's order vacating the arbitration award granting Skikus free health care benefits. It also challenges the order directing the parties to negotiate the health care benefits contributions to be paid by similarly situated PBA retirees. We reject these arguments.

We review decisions on motions to vacate an arbitration award de novo. Sanjuan v. Sch. Dist. of W. N.Y., Hudson Cty., 256 N.J. 369, 381 (2024). However, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). There is a "strong preference for judicial confirmation of arbitration awards." Middletown Twp. PBA Loc. 124 v. Township of Middletown, 193 N.J. 1, 10 (2007) (quoting N.J. Tpk. Auth. v. Loc. 196, IFPTE, 190 N.J. 283, 292 (2007)). "To foster finality and 'secure arbitration's speedy and inexpensive nature,' reviewing courts must give arbitration awards 'considerable deference.'" Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting Borough of East Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201-02 (2013)).

9

"[A]n arbitrator's award resolving a public sector dispute will be accepted so long as the award is 'reasonably debatable.'" Ibid. "Under the reasonably debatable standard, a court 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Id. at 212 (quoting E. Rutherford PBA Loc. 275, 213 N.J. at 201-02).

"[P]ublic policies favor[] restricted review of arbitration awards" and "limit[] judicial review" to "narrow grounds" delineated by statute. Van Duren v. Rzasa-Ormes, 394 N.J. Super. 254, 264 (App. Div. 2007). "An arbitrator's award is not to be cast aside lightly" and can be "vacated only when it has been shown that a statutory basis justifies that action." Ciripompa, 228 N.J. at 11 (quoting Kearny PBA Loc. # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

An arbitration award may be vacated if it is "contrary to existing law or public policy." Middletown Twp. PBA Local 124, 193 N.J. at 11 (citation omitted). However, the public policy exception is narrowly applied. E. Rutherford PBA Loc. 275, 213 N.J. at 202. "Public policy is ascertained by 'reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id. at 202-03 (internal citation omitted). Even

10

under this public policy exception, the "deferential 'reasonably debatable' standard still governs." Id. at 203.

I.

We first address the PBA's argument the judge erred in vacating the arbitration award continuing free health care benefits to Skikus. Specifically, the PBA argues the Township was equitably estopped from requiring Skikus to contribute to his health care benefits in retirement.

In Meyers v. State Health Benefits Commission, 474 N.J. Super. 1, 4 (App. Div. 2022), aff'd, 256 N.J. 94 (2023), we stated Chapter 78 "require[d] retired public employees to contribute towards the cost of their health care benefits coverage through the withholding of a premium contribution from their monthly allowance." (citing N.J.S.A. 52:14-17.28(d)(b)(1)). Judge Suh relied extensively on Meyers. Just a few months after Judge Suh issued her November 13, 2023 order, the New Jersey Supreme Court affirmed the Appellate Division's decision in Meyers.

The facts in Meyers are similar to the facts in this matter. James Meyers was employed by the New Jersey State Police from 1994 until his early retirement in 2015. Meyers, 94 N.J. at 98. On the date Chapter 78 became effective, Meyers had slightly less than eighteen years of creditable service.

Ibid. Meyers, as a former Marine, was permitted to purchase four years of military service credit and apply such credit towards his public service credit. Ibid. Based on purchasing four years of military service credit, Meyers had twenty-five years and one month of creditable public service upon his retirement. Ibid.

Prior to his retirement, the New Jersey Division of Pensions and Benefits (Division) sent a July 2015 letter to Meyers, advising there was "no premium cost" to him for his retirement health care benefits. Ibid. Meyers received free retirement health care benefits for about a year and a half. Ibid.

The Division subsequently realized its July 2015 letter was incorrect, and Meyers was ineligible for the Chapter 78 exception. Ibid. Meyers challenged the Division's decision, arguing it should be equitably estopped from terminating his free retirement health care benefits because he detrimentally relied on the Division's promise to provide cost-free benefits in deciding to retire early. Id. at 99.

The Meyers Court agreed with our opinion "that petitioner James Meyers was not and could never be a 'public worker . . . who ha[d] [twenty] or more years of creditable service in one or more State or locally administered retirement systems on [June 28, 2011].'" Id. at 97-98. The Meyers Court further

agreed Meyers "was never eligible for the exemption under N.J.S.A. 52:14-17.28(b)(3) and that correcting the erroneous exemption was therefore proper." Id. at 98.

Further, Meyers adopted the appellate panel's reasoning that "[t]he Legislature clearly intended to create a finite class of public employees eligible for retirement, that would not have health care premium contributions withheld from their monthly retirement allowance," and petitioner "was never a part of that class." Id. at 99-100. Additionally, the Court stated the Appellate Division "correctly determined [it] did not need to reach the issue of equitable estoppel" because Meyers was "statutorily ineligible to receive free retirement health insurance benefits as of June 28, 2011." Id. at 100.

Contrary to the PBA's argument on appeal, the fact that Meyers purchased four years of military service credit to achieve twenty-five years of creditable public service does not alter the outcome here. The focus before the Court in Meyers, as well as before Judge Suh, was the plain language of N.J.S.A. 52:14-17.28d, requiring a retiree to have twenty years of service as of June 28, 2011 to be entitled to free health care benefits. Neither Meyers nor Skikus had the required twenty years of service as of June 28, 2011 to be entitled to free benefits. Thus, applying Meyers, Judge Suh properly found the Township could

13

not provide free health care benefits to Skikus upon his retirement as a matter of statutory law and, therefore, the arbitrator exceeded his authority by ordering the Township to provide free health care benefits to him.

## II.

We next consider the PBA's equitable estoppel argument. As the Meyers Court held, "a governmental entity cannot be estopped from refusing to take an action that it was never authorized to take under the law–even if it had mistakenly agreed to that action." 256 N.J. at 101.

The Meyers Court created a bright line rule as to the applicability of the N.J.S.A. 52:14-17.28d(b)(3) exemption to situations nearly identical to the matter before us. As the Court wrote:

> Petitioner was never statutorily eligible for the benefits he was mistakenly awarded because he did not have the requisite years of creditable service by June 28, 2011. The [governmental entity] was never authorized to offer him free health care benefits – an act utterly beyond the jurisdiction of the [governmental entity] and, therefore, ultra vires in the primary sense. . . . As a result, the relief petitioner seeks in this matter is, quite simply, unavailable: the [governmental entity] has no ability to make a decision that would be considered void under the law, and the doctrine of equitable estoppel does not apply in this matter.
>
> [Id. at 101-02.]

14

We are bound by New Jersey Supreme Court precedent. See Wiggins v. Hackensack Meridian Health, __ N.J. __ (2025) (slip op. at 19). Because it is undisputed Skikus lacked twenty years of creditable service as of June 28, 2011, he was statutorily ineligible to receive free health care benefits despite the Township's mistake.

The arbitrator erroneously applied equitable estoppel to preclude the Township's collection of health care benefits premiums from Skikus. Thus, Judge Suh correctly vacated the arbitrator's decision regarding Skikus's health care benefits.

III.

We turn to the PBA's argument that the judge erred in affirming the arbitrator's decision to remand for further negotiation the health care benefits contributions for retirees with less than twenty years of service as of June 28, 2011. The arbitrator highlighted the inconsistent positions advanced by the PBA and the Township on this issue. While the arbitrator found the parties negotiated, he found the gap between the parties' understanding concerning the payment of health care benefits lacked a "meeting of the minds." Even though the CBA stated the continued cost of health care coverage for retirees would be borne by the Township, N.J.S.A. 52:14-17.28d(b)(2)(a) required public

15

employers and employees conduct negotiations concerning contributions for health care benefits as if the full premium share was included in the prior contract after full implementation of Chapter 78 on June 28, 2015.

"Generally, when a court reviews an arbitration award, it does so mindful of the fact that the arbitrator's interpretation of the contract controls." E. Rutherford, 213 N.J. at 201. Because interpreting a collective bargaining agreement is a task left to the arbitrator, "the courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his [or hers]." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 433 (1996) (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960)).

Here, because "[t]he language in Article IX, F did not change from prior contracts," the arbitrator found the CBA did not represent complete negotiations and "there [wa]s no evidence the [parties] affirmed the applicability of Article IX, F to the new requirement imposed by [Chapter 78]." Under the circumstances, the arbitrator acted reasonably in remanding for negotiations between the parties to determine the contribution amount for retirees who did not qualify for the Chapter 78 exemption.

16

On this record, we are satisfied Judge Suh properly confirmed the arbitrator's remand decision because "the CBA [did] not indicate what amount retirees are to pay for their health insurance premiums," and "[t]he arbitrator's decision to remand the issue to the parties for negotiation was reasonably debatable."

To the extent we have not addressed any argument raised by the PBA, they lack sufficient merit to warrant discussion in a written opinion R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION